191 So. 407

### WOODALL v. STATE.
### 7 Div. 459.

Court of Appeals of Alabama.
June 29, 1939.

Rehearing Denied Oct. 3, 1939.

76

John R. Robinson and Motley & Motley, all of Gadsden, for appellant.

Thos. S. Lawson, Atty. Gen., and Noble J. Russell, Asst. Atty. Gen., for the State.

RICE, Judge.

Henry Heald owned and operated a "road-house" known as the "Lighted Pine", where, among other things, beer was sold, and a hall for dancing maintained.

Appellant, who weighed 210 pounds, was employed by Heald as a sort of general manager—who had, under Heald, complete control of the establishment.

Heald had employment elsewhere; and, when his day's work was over, it was his custom to come to the "Lighted Pine" and remain until closing time—often far into the night.

Forney Bradford was employed to work about the "Lighted Pine"—just, generally, to do anything that was to be done—under the supervision and control of appellant—and, of course, subject to the directions of Mr. Heald.

Bert Adams was a guest, or patron, or loafer, at the "Lighted Pine" at the time the matters we are to discuss occurred.

Late on the night of August 13th, 1938, or; as we understand, about one-thirty or two o'clock on the morning of August 14th, deceased, Jerry McEntire, a youth of the age of 20 years, and weighing about 140 pounds, came into the "Lighted Pine" in company with Johnnie Shirley. .

The patrons for the day (or night) had all departed—if we except Bert Adams, whose status we have undertaken to describe hereinabove.

Seated at a table in the dance hall, or standing about it, were Henry Heald, Forney Bradford, appellant, and Bert Adams. The day's "intake"—that is, the cash taken in—from the business at the "Lighted Pine" was being counted by, and accounted for to, Heald, the owner—and perhaps being put away for the night (or day).

When Jerry McEntire, the deceased, and Johnnie Shirley came into the dance hall—occupied only as we have above undertaken to describe—Jerry sought to buy some beer "on credit". He asked first one, then another, of the three—Heald, Bradford, and Woodall—who were in charge of, or working for, the business at the "Lighted Pine", to let him have the beer. They all refused.

From that point on the testimony is in hopeless conflict. It does appear to be conceded on all hands that McEntire, the deceased, made a very insulting remark to the three mentioned.

The testimony on the part of the State tended to show a very vicious assault on McEntire, participated in by all the three we have named above, as he was in the act of leaving the dance hall,—appellant, all the while, belaboring deceased, who was, as stated, on his way out of the dance hall, over the head, unmercifully, with a "blackjack"—insufficiently described in the testimony, but which seems to have been, undoubtedly, a deadly weapon.

The testimony on the part of the appellant—while admitting that he struck, and

killed, Jerry McEntire, with this "black-jack"—tended to show that he acted in self-defense—as that term is known to the law.

■ The issues were peculiarly for the jury. They found that appellant was guilty of murder in the second degree,—he being indicted and on trial for murder in the first degree—and fixed his punishment at imprisonment in the penitentiary for the term of twelve years.

We have endeavored to perform our full duty under the terms of Code 1923, Sec. 3258, but the only matters that seem to merit discussion by us are the two discussed so ably by appellant's counsel in their brief filed here on this appeal.

We will treat them in the order set by them, to-wit:

1. Heald testified as a witness for appellant. He admitted that he was under indictment for the killing of Jerry McEntire; the same offense that appellant was being tried for. And his testimony tended to make out a "case of self-defense" on behalf of appellant.

Upon cross-examination by the State, Heald was asked, in substance, if he did not have a conversation with one John H. Sharpton at the "Lighted Pine" about two hours before the killing of McEntire, in which, he, Heald, "spoke about two jaw bones and two broken noses and (he) said when they got too rough for him and Bradford, he turned them over to this other fellow (meaning, clearly, Woodall, the appellant,) and (he) said this fellow McEntire had come there and got to causing trouble and he put him out the door and in the truck on his head, and said that when he came back there it was going to be a damn sight worse." He denied having any such conversation.

■■ Then on rebuttal, the State was allowed, over appellant's timely objection, with due exception reserved, to elicit testimony from John H. Sharpton that Heald *did* make, in substance, the statements we have quoted in the next preceding paragraph. Appellant's counsel stoutly contend this was error for which the judgment of conviction should be reversed. But we do not agree. It seems to us, and we hold, the ruling involved is saved from error by what was said by Bricken, P. J. in the opinion in the case of Tapscott v. State, 18 Ala.App. 67, 88 So. 376, 377, to-wit:

"The general rule is that on cross-examination of a witness any fact may be elicited which tends to show bias or partiality, and if the witness denies the facts showing the bias, the cross-examining party may call other witnesses to contradict him." (And see the array of authorities cited by Presiding Judge Bricken to support the quoted statement where it appears in the opinion in the said case of Tapscott v. State; also, see Smith v. State, 15 Ala.App. 7, 72 So. 593.)

2. Appellant duly requested, and the court refused to give to the jury, the following written charge, to-wit: "12. I charge you, gentlemen of the jury that if the evidence of the State consists in the statements of the witnesses of the truthfulness of which the jury have a reasonable doubt, they cannot convict on such evidence, although the jury may not believe the testimony of the defendant's witnesses."

■ The basis on which charges similar to the one quoted are held to be proper, in a proper case, to be given to the jury is found, we believe, in the opinion by our Supreme Court in the case of Segars v. State, 86 Ala. 59, 5 So. 558, 559, the pertinent part of which we quote, to-wit: "In a criminal case, a prima facie case of guilt does not generally rebut the presumption of innocence, or shift the burden of proof. Until the state proves, in the first instance, beyond a reasonable doubt, the facts which constitute the offense, the accused is not required to establish his innocence by exculpatory evidence. The jury are not authorized to find the defendant guilty on the evidence of a single witness [or, we apprehend, of any number of witnesses], upon whose testimony the question of guilt depends, if they have a reasonable doubt of the truth of his [their] statements."

In the Segars case, from the opinion in which we quoted in the next preceding paragraph, the evidence for the State consisted of the testimony of but a single witness, and a written charge not different in effect from the one here under consideration was requested. Of its refusal the learned justice writing the opinion said: *"The evidence on the part of the defendant being wholly exculpatory,* the effect of refusing the charge is to shift the burden of proof, on a prima facie case of guilt being made by the prosecution."* (Italics supplied by us.)

And therein is to be found the test determining when such a charge is proper and should be given: "The evidence on the part of the defendant being wholly exculpatory." Mills v. State, 1 Ala.App. 76, 55 So. 331; Gilbert v. State, 20 Ala.App. 565, 104 So. 45.

Here, we do not think the charge requested was unintelligible. And if the evidence had been as hypothesized it should have been given.

But it is as true here, as in .the case of Jackson v. State, 4 Ala.App. 199, 59 So. 231, 232, viz.: "The evidence in this case, tending to show the defendant's guilt, consisted of something more than the testimony of the witness [es] who was [were] introduced by, and who testified on behalf of, the state. Parts of the defendant's own testimony tended strongly to show his guilt. The jury had the right to reject as untrue the exculpatory parts of the defendant's evidence, and to give full credence to those parts of his testimony tending to show his guilt. The facts in the present case are entirely different from those in the cases of Segars v. State, 86 Ala. 59, 5 So. 558, and Washington v. State, 58 Ala. 355. In each of those cases there was only one witness for the state, and the *testimony of that witness was the only evidence tending in the slightest degree to show the defendant's guilt.* In the present case that condition does not prevail." (Italics supplied by us.) And a charge similar to the one we are discussing was held to be properly refused.

Here, appellant's own testimony admits that he slugged to death the deceased with a "black-jack"—deceased being unarmed and weighing 140 pounds, while appellant weighed *210.* True, his testimony tends to show he acted to defend himself from grievous bodily harm; it being his theory that he was attacked by deceased (unarmed) and Bert Adams, who had a knife in his hand—it being conceded by him that Johnnie Shirley, the only other person in the hall besides himself, deceased, Adams, Heald and Bradford, had nothing whatever to do with the fight.

But appellant himself testified that when Adams and deceased attacked him—to use appellant's own language—: "he (deceased) hit at me and when he hit at me Adams run around and struck at me with a knife and *I knocked Adams down.* I saw a knife in Adams hand. * * * Adams fell back over these stools *and got up and run out* * * * then Adams started back in this door with a rock in each hand, I said to him, you lay them rocks down and get away from here *and he threw the rock down and run,* and McEntire hit at me again *and then I hit him.* I didn't hit McEntire that night with the 'black-jack' over three licks." (Italics supplied by us.)

So it at once appears that, *according to appellant's own testimony,* when he (the 210 pounder), struck deceased, (the 140 pounder), with the "black-jack", the only danger he was in was from deceased's *bare fists!*

The jury doubtless concluded, as they had the right to do, that this was not sufficient to justify him in *using* his "black-jack."

 We are clear to the conclusion that, applying the rule as outlined in the opinion in Jackson v. State, supra, which we have quoted, there was no error in refusing appellant's written, requested, Charge 12, above set out.

Nor do we find error in any other ruling or action by the court, on the trial of this case.

It results, the judgment of conviction should be affirmed.

And it is so ordered.

Affirmed.