CATES, Presiding Judge.
Haynes appeals from his conviction of receiving, etc., a stolen automobile.[1] The trial judge sentenced him to ten years in the penitentiary.
The indictment, in essential parts, charged as follows:
“* * * GRAVER HAYNES alias G. J. HAYNES alias GEEK HAYNES alias GROVER JESSE HAYNES alias JEEK HAYNES, whose name is to the Grand Jury otherwise unknown, did Buy, Receive, Conceal, or Aid in Concealing one (1) 1967 Cadillac automobile, vehicle identification number L72S4208, a better description of which being unknown to the Grand Jury, of the total value, of, to-wit: $1400.00 the personal property of Arthur McPeters, knowing that the same had been stolen, or having reasonable grounds for believing same had been stolen, and not having the intent to restore it to the owner, * * *”
I
Jean Robinson, a resident of Tal-ladega, testified for the State that in June, 1973, she bought from Mr. Haynes a 1967 Cadillac for $800.00 and traded him another car. The Cadillac was unsatisfactory; she returned it and got another car instead. The bill of sale for this car stated that the Motor Number was K-71884056. This number was apparently the same as one taken off a wrecked Cadillac which Haynes had bought from an insurance adjuster.
In February of 1974 Lt. Hardigree, of the State Department of Public Safety, came to see Mrs. Robinson inquiring about the transaction whereunder she had bought the Cadillac. On cross examination, she described the car as a white Cadillac with a black vinyl top. She did not remember much else about the car’s description because she didn’t keep it very long.
Lt. Hardigree took the stand on behalf of the State and testified that on, or about, February 19, 1974, he went to see Mrs. Robinson in Talladega at her place of work and saw the car which she said Haynes had sold her. The vehicle identifi *205 cation number usually found near the windshield bore the number K-71884056. Later the same car was found in Atlanta with these public numbers, but also had certain confidential VIN marks which reflected the identity of a different Cadillac which had been earlier stolen from Mr. Arthur McPeters of Gadsden, sometime around June 14, 1973.
After Hardigree had examined, in a cursory fashion, Mrs. Robinson’s Cadillac, in Talladega, he went back later to make a further examination and discovered that it had been moved from its parking place. It seems that Haynes, because of Mrs. Robinson’s complaint, had come to Talladega and removed it. When Hardigree returned to Anniston to see the car in Haynes’s possession, Haynes reported that it had gone to Roanoke for some additional work and was to be returned to Haynes’s shop. This eventuality never came into being. The next time Hardigree found the car it was in Atlanta, where it had been impounded by the police. McPeters identified it as his, by certain catsup stains on the upholstery and some unfinished wiring in the trunk.
Haynes testified in his own behalf describing his calling thus:
“I am in the automobile garage, salvage, and parts business [for] twenty-eight years. I buy wrecked automobiles, salvage them for the parts. I also buy wrecked automobiles that are repairable and have them repaired, occasionally. I do not repair them in my shop.”
He explained that he did not examine the VIN numbers on the wrecked Cadillac he bought from the adjuster. After he took the car back from Mrs. Robinson he sold it to Ross McKleroy. McKleroy did not testify. No license tag transfer to him in the probate judge’s office was produced. See Code 1940 T. 51, § 706, as amended, which was in Patterson v. State, 45 Ala. App. 229, 228 So.2d 843, construed to be in aid of “police, injured persons and tax officials.”
We do not consider this explanation so cogent that every reasonable jury would as a matter of law have been required to credit it as a reasonable explanation of Haynes’s recent possession of stolen property and thus give him an acquittal.
His failure to ascertain what the VIN number was partakes of what Glanville Williams, Criminal Law, The General Part (2d ed.) § 57, describes as wilfull blindness. As a dealer in auto salvage Haynes was in an area where pilferers seek out witting or unwitting fences. To shut his eyes as to a VIN is a fact which a jury may have before them in weighing the reasonableness of his explanation of the stolen Cadillac.
“ * * * The evidence against Spivey of the altered number plates, of the discrepancies in bills of sale and other surrounding circumstances, together with the permissible inference from his possession of recently stolen automobiles sufficed to meet the stated test. Viewed in the light most favorable to the government the evidence was sufficient to establish appellant’s guilt. Glasser v. United States, 1942, 315 U.S. 60, 62 S. Ct. 457, 86 L.Ed. 680.” United States v. Spivey, 508 F.2d 1061 (5 Cir. 1975)
“ * * * A summary of State Police Sergeant George Meyers’ testimony is that he took into custody the station wagon because a vehicle that fitted its description had been reported as stolen, and this information was obtained when the motor company filed a stolen car report at the time of the theft with the State Police. That report showed the serial number, and Meyers knew the confidential number is composed of the last five digits of the serial number. This officer checked the serial number of the machine in controversy and found it did not compare with any number listed for a stolen vehicle. In fact, the number cor *206 responded with that of a 1947 station wagon for which appellant had a bill of sale.
“But this officer, having with him a report on a stolen 1958 station wagon and believing the car under examination to be a 1958 model rather than a 1947 one, as stated on appellant’s bill of sale, contacted either the National Auto Bureau or the Federal Bureau of Investigation (the only two agencies from which such information can be obtained) for the location on the car of the confidential number of the 1958 model reported as stolen. He obtained this information, checked on the station wagon the place given him, found the confidential number of the 1958 stolen vehicle on the station wagon in appellant’s possession, and thereby obtained knowledge that this was the car taken from the lot of the motor company. From the above evidence, it is shown it is easy to remove or change any public number on a motor vehicle but that only by chance could a thief find and alter the confidential number.
“We believe the foregoing testimony * * * makes out a case against appellant that will sustain the verdict of the jury.” Bower v. Commonwealth, Ky., 357 S.W.2d 333.
The subject of “recently stolen” has been the topic of much judicial writing. In Davenport v. State, 53 Ala.App. 326, 299 So.2d 767, the word “recent” was described (as is any measure of time not expressed in hours, days or other units based on the earth’s rotation and orbiting) as relative in concept — both as to the passage of time and the type of property. Automobiles offer a peculiar example: virtually all are publicly registered, their utility makes them notoriously visible and their lawful transfer requires some red tape. See Burroughs v. State (Fla.Dist.App.) 221 So.2d 159.
In Smitherman v. State, 33 Ala.App. 316, 33 So.2d 396, the opinion recognized the ordinary rule that remoteness of time affects weight rather than admissibility. However, it recognized a threshold question of law — when objection is interposed, viz:
* * * the tendered evidence must not be so remote in point of time as to be without causal connection or logical relation to the main event. * * * ”
In like vein, Terrell, J., in Cone v. State, Fla., 69 So.2d 175, cited many cases of varying times and kinds of property. In that case the accused was found with a car about nine months after it had been stolen. The conviction was affirmed. See also, Anno. Stolen Motor Vehicles — Presumptions, 15 A.L.R. Fed. 856, particularly § 5 — effect of passage of time. See Buckles v. State, 50 Ala.App. 548, at 552, 280 So.2d 810.
Likewise, relativity is applied to the term “exclusive” sometimes affixed to possession in such cases. See Anno. 51 A.L.R.3d 727.
In this case the trial judge instructed the jury:
“Now, the Law of Alabama states that the possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the Jury may reasonably draw the inference and find, in light of the surrounding circumstances shown by the defendant in the case, that the person in possession knew the property had been stolen.
“Now, the term recently is a relative term and has no fixed meaning. Where property may be considered recently stolen depends upon the nature of the property and all facts and circumstances shown by the evidence in the case. The *207 longer the period of time since the theft the more doubtful becomes the inference which may be drawn from unexplained possession. Now, this explanation of possession, if you find from the evidence the defendant was in possession of recently stolen property, should be consistent with honesty, and may arise from any evidence in the case, and bear in mind that the defendant in a criminal case never has the burden or duty of calling any witnesses or producing any evidence. Now, it is the exclusive province of the Jury to determine whether the facts and circumstances shown by the evidence in the case warrant any inference which the Law permits the Jury to draw from the possession of recently stolen property.
“If you find, as a fact, that the defendant possessed recently stolen property described in the Indictment, and it has been satisfactorily explained from the evidence consistent with honesty or innocence, or if you entertain a reasonable doubt of guilt, you must acquit the defendant.
“If you find, as a fact, that the defendant possessed recently stolen property described in the Indictment, and the explanation for said possession, you find as a fact to be false or simulated, that is a circumstance the Jury may infer that the person in possession knew the property had been stolen. It is a question of fact for you to determine in this case, Ladies and Gentlemen of the Jury, whether or not this defendant is guilty or innocent of the charge placed against him in the Indictment in this case.”
The court, in addition, properly charged that the State had the burden to convince from the evidence beyond a reasonable doubt. No exception was taken to the charge, nor do we think one could have been taken to it. Buckles v. State, 291 Ala. 359, 280 So.2d 823.
II
To support his motion for a new trial, Haynes adduced the testimony of one James Michael Farrell.
“ * * * Farrell testified that * * * after the trial of G. J. Haynes, he related to Mr. Haynes some facts that had to do with changes in some numbers on a 1967 Cadillac automobile * * * at Thompson’s Garage in Blue Mountain, * * * about two years before this time * * * by one Hugh Gray Whistenant8 * * * with a pick and hammer back near the fire wall of the automobile * * * which was in good repair * * *. He further testified that another 1967 Cadillac automobile which was the wrecked automobile G. J. Haynes had purchased from an insurance company was there * * *. * * * Whistenant was changing the numbers on a 1967 automobile other than the wrecked automobile of G. J. Haynes. [Farrell] * * * asked * * * Whis-tenant ‘What are you doing Hugh Gray ?•’ Whistenant replied that he was “putting this one on Geek”. He testified that the ‘one’ Whistenant was referring to was the automobile he was working on with the pick and hammer. He testified that he later saw the automobile on which the numbers were being changed in the possession of G. J. Haynes. He further testified that the Cadillac automobile he saw in G. J. Haynes’s possession was not the wrecked automobile which Haynes had purchased from Gay and Taylor but that it was the automobile on which * * * Whistenant had been working. Appellant’s brief. * *
We do not consider that this testimony meets the test of received Alabama deci *208 sions putting trial judges in error for denying motions for new trial based on newly discovered evidence.
The State in its brief aptly points out that the expression attributed to Whisten-ant, i. e., he was “putting this one on Geek” is full of latent ambiguity, to say the least. In this connection we quote from Vinet v. State, 38 Ala.App. 299, 83 So.2d 357.
“To warrant the granting of a new trial on the ground of newly discovered evidence it must appear to the court that the evidence so found, if it had been considered by the jury, would have probably changed the result of the trial. (There are other conditions or factors which we need not discuss.) O’Pryor v. State, 237 Ala. 13, 185 So. 374; Washington v. State, 259 Ala. 104, 65 So.2d 704.
“To illustrate our view that there is no merit in this insistence, we have delineated the circumstances incident thereto in some detail. It will be noted that there was a degree of uncertainty on the part of the witnesses with reference to the size of the tracks found at the locale. The evidence does not make it certain that the defendant did not in fact make the tracks. To say the least, the evidence is inconclusive and weak in its tendency to establish the innocence of the accused.”
In other words, we consider that Farrell’s testimony was not of such vigor as would have indicated the probability of a different verdict had he testified at nisi prius on the indictment. See Zuck v. State, 57 Ala.App. 15, 325 So.2d 531 (1975).
After a consideration of the entire record under Code 1940, T. 15, § 389, judgment below is
AFFIRMED.
All the Judges concur.

. “Any person who buys, receives, conceals, or aids in concealing any personal property whatever, knowing that it has been stolen, or having reasonable grounds for believing that it has been stolen, and not having the intent to restore it to the owner, shall, on eonvietion, be punished as if he had stolen it; and such offender may be tried and convicted, although the person who stole the property has not been tried and convicted.” — Code 1940, T. 14, § 338.

. See Whistenant v. State, 50 Ala.App. 182, 278 So.2d 183.