[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 360 
Buying, receiving, or concealing stolen property; sentence: five years imprisonment.
During the night of April 24, 1975, several items were stolen from Herbert M. Luckfield d/b/a Coach and Carriage Antique Gallery in Ozark, Alabama. Among the items stolen were two antique Edison phonographs, one of which is the stolen property involved in this case. Several of the stolen items, including one of the Edison phonographs, were discovered in an apartment and a warehouse rented directly or indirectly by appellant. These items were stored in the Dothan Civic Center warehouse where they were later viewed and identified by Mr. Luckfield as being articles stolen during the burglary of his store on April 25.
Michael Crane, a prosecution witness, testified he purchased an antique Edison phonograph from appellant at appellant's residence in Colony Square Apartments sometime in August 1976. After learning of appellant's arrest in relation to stolen property, Crane became concerned that the phonograph he purchased from appellant may have been stolen. As a result, Crane turned the phonograph over to Detective Locke of the Dothan Police Department on October 25, 1976. Crane testified the phonograph was in good condition and had a small plate inscribed with numbers attached to it. *Page 361 
The phonograph which the Dothan police received from Crane was tagged and stored in the evidence room at the Dothan police station. Officer Grady Mixon of the Ozark Police Department was contacted by the Dothan police and requested to deliver this phonograph to Mr. Luckfield, which both Mixon and Luckfield testified Officer Mixon in fact did deliver. Luckfield testified this was "the other phonograph that was missing." He stated when he received it from Officer Mixon, the phonograph did not have a serial number plate; the plate had been pried off, damaging the machine in the process to the extent of rendering it inoperable. The police had previously returned to Mr. Luckfield the other antique phonograph which he had identified at the Dothan Civic Center warehouse.
Neither phonograph was produced at trial. Luckfield testified that the Crane phonograph was then in California being repaired.
Appellant contends there is some confusion as to whether the phonographs referred to above were in fact one and the same. Appellant suggests that even as many as four different phonographs were involved in the same burglary. Much of appellant's argument is grounded on this contention.
 I.
Appellant's first point of error alleges the State failed to present evidence sufficient to establish the corpus delicti. The elements the State is required to prove in a case of buying, receiving, or concealing stolen goods are that the goods in question have been feloniously taken away by someone, that the defendant bought, received, concealed, or aided in concealing the goods, knowing that they were stolen, and without an intent to restore them to the owner. Scott v. State,55 Ala. App. 318, 314 So.2d 921 (1975); Title 14, § 338, Code of Ala. 1940.
 A.
The first element listed above was clearly proven at trial. Mr. Luckfield testified that on the morning of April 25, 1975, he discovered a door and a portion of the roof of his business had been torn open after the building had been locked on the night of April 24, 1975. The walls in the front of the store were bare and many large items were missing. Included in his inventory of the missing items were "one Edison phonograph" and one "black top Edison phonograph," also described as "[t]he other phonograph that was missing." Both phonographs were taken at the same time. He testified additionally he had not given anyone permission to take the property described above. Under the indictment, proof of the corpus delicti did not depend upon who stole these unique antiques. Proof that they were stolen by someone was all that was required, and there was ample evidence for that purpose. Wood v. State, 18 Ala. App. 654, 94 So. 256
(1922); Scott, supra.
 B.
The State sought to prove the second element listed above by a showing of several factors. Scienter, a necessary element for sustaining a conviction of receiving stolen property, may be inferred by the jury from the facts and circumstances surrounding the whole transaction. Vines v. State, 57 Ala. App. 117, 326 So.2d 307 (1975). The State relied partially on a showing of possession of the recently stolen property by appellant to infer scienter. The requisite scienter for this crime may be inferred from possession of recently stolen goods.Rhone v. State, 53 Ala. App. 338, 299 So.2d 781 (1974). While the possession of recently stolen property does not raise a presumption as a matter of law as to the possessor's guilt, it does raise a presumption as a matter of fact to be passed upon by the jury. Milligan v. State, 45 Ala. App. 112, 226 So.2d 172
(1969).
The term "recently stolen," by its very nature, is relative in concept — both as to the passage of time and the type of property involved. It is determined upon the facts of each case and, depending upon the particular circumstances, may vary *Page 362 
from a few days to many months. Haynes v. State, Ala.Cr.App.,335 So.2d 203 (1976). The remoteness has regard additionally to the particular factors and considerations surrounding each case. Hence, it is not feasible to state a fixed rule with reference to the element of time lapse. Smitherman v. State,33 Ala. App. 316, 33 So.2d 396 (1948). Remoteness of time affects weight rather than admissibility. Yet, as Smitherman points out, evidence must not be so remote in point of time as to be totally without causal connection or logical relation to the criminal act involved.
The time lapse of some sixteen months involved in the immediate case, if standing alone, might well fall within the excessive time cautioned against in Smitherman. However, Crane's evidence of appellant's actual possession of the stolen phonograph sixteen months after the fact must be considered in light of other relevant evidence. Thus, when considered first with the evidence introduced as to appellant's actual or constructive possession of other stolen items which were identified by Luckfield as being stolen in the same burglary (some of which were found in an apartment where Waters and his girl friend Lethia Speigner lived) and secondly with his own confession that police "had him cold," the possession clearly bares a causal connection and logical relation to the Luckfield burglary from which the jury could well infer scienter.
 C.
In this same vein, appellant argues that the chain of possession which the State used to prove both his recent possession and the value of the phonograph was fatally incomplete. We do not agree. Crane testified he bought the phonograph from appellant at appellant's apartment. He further stated he turned that same phonograph over to Officer Locke. Locke testified he received the phonograph from Crane, tagged it, placed it in the evidence room, and called Officer Mixon in Ozark to pick it up. Mixon testified he personally received the phonograph from Officer Locke and then took it to Ozark where he immediately turned it over to Luckfield. Luckfield testified he received the phonograph from Mixon and that the phonograph had a market value of $350. Each one testified the phonograph was in the same condition when he relinquished custody as when he received custody.
The alleged fatal break in the chain of custody consists of Locke's failure to testify on the stand that he turned the phonograph over to Mixon. He testified of his intent to do so and of his call to Mixon. Mixon did in fact testify Locke turned the phonograph over to him. Chain of custody evidence must show a reasonable probability that the property involved is one in the same and in the same condition. While the better practice would have been to offer Officer Locke's testimony in this regard, there was sufficient evidence to establish with a reasonable probability that the phonograph Luckfield received from Mixon was the phonograph Crane bought from appellant. Bellv. State, Ala.Cr.App., 339 So.2d 96 (1976). While there may have been a minor discrepancy in Crane's and Luckfield's description of the phonograph as to serial numbers (and it is not clear there was one — see facts set out above), it was for the jury to resolve as a matter of evidentiary fact. McConnellv. State, 48 Ala. App. 523, 266 So.2d 328 (1972).
Appellant argues additionally that evidence of Luckfield's other identified stolen goods found in appellant's apartment and in the warehouse rented by Lethia Speigner should not have been allowed. Aside from the fact that appellant's counsel himself introduced evidence concerning these goods, the goods were all involved in one continuing offense; the evidence tending to identify the goods as having been stolen with the phonograph. It was, therefore, relevant to show what goods were found where, as there was evidence connecting the appellant with actual or constructive possession of the stolen goods at those places. Broadfoot v. State, 26 Ala. App. 369, 160 So. 269
(1935); Leverett v. State, 18 Ala. App. 478, 93 So. 347 (1922). *Page 363 
 D.
Appellant's final contention in this area is that his oral confession was erroneously admitted, primarily because the prosecutor failed to lay a proper predicate before the jury. The prosecutor laid a proper predicate outside the presence of the jury before the judge, but left out the Miranda warning element referring to free counsel in laying the predicate before the jury. Defense counsel, however, failed to object to this omission. While appellant's counsel specifically objected earlier in the trial to admission of "any statement of Billy Waters made out of the hearing of his attorney," the objection made no reference to laying an improper Miranda predicate before the jury.
Specific grounds of objection waive all grounds not specified. Any earlier objection by appellant certainly did not cover the error insisted on above, upon which no objection was taken. The appellant did not object to the omission of thatMiranda element, thus no error was preserved for review by this court. Hargrove v. State, Ala.Cr.App., 344 So.2d 823 (1977), cert. denied, Ala., 344 So.2d 826.
Appellant also contends the oral confession was erroneously admitted because he refused to sign a written waiver form. The record reveals, however, that he did agree to talk with police after having been read his rights and having indicated to police he understood them:
 "Q. Did you ever read to him off a Miranda card, or statement?
 "A. Read to him off of a police department form, which has the Miranda warning rights, in detail.
"Q. Uh-huh. But he refused to sign?
"A. Yes, sir.
* * * * * *
 "Q. Sergeant Locke, did you warn him of the right that he had a right to have counsel present?
"A. Yes, sir.
 "Q. Did you warn him of the right that he didn't have to talk to you, if he didn't want to? He had the absolute right to remain silent?
"A. Yes, sir.
 "Q. Did you tell him, that any time that he started talking, he could stop talking?
"A. Yes, sir.
 "Q. Did you tell him that if he couldn't afford a counsel, one would be appointed to him?
"A. Yes, sir.
"Q. Did you ask him if he understood these rights?
"A. Yes, sir.
"Q. And what did he reply?
 "A. He indicated to me that he did. And to Sergeant Lynn and to Sergeant Wachob.
 "Q. And then — did he agree to talk to you at that time?
"A. Yes, sir.
 "Q. All right. At that time, he told you that he wasn't going to sign anything?
"A. Yes, sir.
"Q. But he would talk to you?
"A. Yes, sir.
* * * * * *
"Q. Now, did he make a statement thereafter?
 "A. Yes, sir. We asked him to tell us of his associates, people that might have taken or had property in their possession. And he advised us that names would not do any good; that, unlike him, they had gotten rid of their property. That we had him cold.
"Q. Okay.
 "A. We advised him to give us names, dates, and items, and we would try them on the case. At that time, he requested counsel.
* * * * * *
 "Q. You just questioned him on about three or four occasions during the two and one half days that he was there, is that correct?
"A. Yes, sir.
 "Q. And did he ask for a lawyer during any of that time, except the time that you just mentioned a few minutes ago?
"A. To me, no sir. *Page 364 
 "Q. And when he did ask for a lawyer, you stopped questioning him, is that correct?
"A. That's correct."
We are convinced appellant was appropriately advised of his constitutional rights, including the right to the presence of an attorney at interrogation. He stated he understood those rights, and further agreed to talk with the detectives. He freely answered certain questions. He then demonstrated an intelligent waiver of his rights by selectively refraining from answering other questions without counsel, whereupon the interrogation immediately ceased. Under the facts as they appear in the record, appellant knowingly waived his right to have counsel present and to remain silent. Hodge v. UnitedStates, 392 F.2d 552 (5th Cir. 1968). See also: State v. Adams,76 Wn.2d 650, 458 P.2d 558 (1969); Houston v. State,56 Ala. App. 295, 321 So.2d 261 (1975).
 F.
Appellant finally alleges the confession was erroneously admitted because the corpus delicti, was not proven independently before introduction of the confession. Appellant's argument fails on two grounds.
First, facts were testified to that the burglary was committed. The goods there stolen were described and identified by Luckfield in conjunction with evidence that those same goods were found in appellant's possession. Circumstantial evidence may afford proper proof of the corpus delicti. McClendon v.State, Ala.Cr.App., 341 So.2d 174 (1976). Where there are uncorroborated facts and circumstances which tend to show the corpus delicti, a voluntary confession may be introduced to satisfy the jury beyond a reasonable doubt as to the existence of the corpus delicti. Bridges v. State, 284 Ala. 412,225 So.2d 821 (1969); Coleman v. State, 57 Ala. App. 392,328 So.2d 642 (1976). We point out further that appellant's argument is not well taken in that he made no objection on this ground to admitting the confession. In the absence of an objection on this point, there is nothing to be reviewed by this court.Robinson v. State, 45 Ala. App. 74, 224 So.2d 675 (1969).
 G.
The third element of the offense, that of receiving the goods without an intent to restore them to the owner, was fully satisfied by Crane's evidence that the appellant sold the stolen phonograph to him. Hence, all elements of the offense were met, the corpus delicti was satisfactorily proven, and the confession was properly admitted.
 II
Appellant argues this case must be reversed because venue was not proven. While it is debatable as to whether or not venue was circumstantially proven through the testimony of Lethia Speigner that appellant's apartment was her Dothan address, this allegation is still not ground for reversal in the instant case. The issue of venue may not be raised for the first time on appeal. No objection or motion having been made on this ground previously, no error was preserved for this court to review. Hunt v. State, Ala.Cr.App., 331 So.2d 834 (1976).
 III
Appellant argues the indictment in this case contained an insufficient description of the stolen property. The property was described as "one antique phonograph." Appellant did not raise that issue prior to this appeal. There being no proper objection, no demurrer, and no ground in the motion for a new trial raising this point, appellant's plea of not guilty waived any defect appearing in the indictment. Lucious v. State,44 Ala. App. 407, 214 So.2d 706 (1968); Miller v. State,43 Ala. App. 287, 189 So.2d 576, cert. denied, 280 Ala. 715,189 So.2d 580 (1966), cert. denied, 385 U.S. 1043, 87 S.Ct. 783,17 L.Ed.2d 687 (1966); Myles v. United States, 170 F.2d 443 (5th Cir. 1948). *Page 365 
 IV
Appellant alleges the court below erroneously admitted evidence during the prosecutor's cross-examination of Lethia Speigner of a prior co-arrest of her and appellant in another crime. The prosecutor was attempting to show bias in favor of appellant on the part of Miss Speigner, and the court allowed the evidence on that basis. The record reveals the following:
 "Q. Now, as a matter of fact, you are charged with 11 counts of buying, receiving, and concealing stolen property, along with Mr. Waters, in this county, aren't you?
"A. Yes, I am.
 "Q. And you were charged with burglary with him in Eufaula, weren't you?
 "A. That's — I'm not charged with anything in Eufaula?
"Q. You are not charged with him in Eufaula?
"A. No.
 "Q. You were present with him when he was arrested in Eufaula, though, weren't you?
"MR. ROBISON: Judge, I object to that.
"MR. SORRELLS: Judge, we are showing bias —
"THE COURT: Yes. I overrule the objection.
 "Q. Weren't you present with him in Eufaula, when he was arrested up there?
"A. Yes, I was.
"Q. Outside of a drug store up there, were you not?
"A. No, I was not.
"Q. Where were you?
"A. I was in a restaurant.
"Q. And where was he when he was arrested?
"A. Where was he?
"Q. Yes?
"A. When I was arrested?
 "Q. When he was arrested? Up in Eufaula. Where did they arrest him up there? You were with him in Eufaula, on that occasion, were you not, Lethia?
 "MR. ROBINSON: Objection, Your Honor. We don't see the relevancy of this line of questioning.
"THE COURT: Overruled.
"Q. You were in Eufaula with Billy Waters when —
"A. That's right.
"Q. Weren't you arrested at the same time?
"A. Yes, I was.
"Q. And what was that arrest for?
"A. Second degree burglary.
"Q. All right. Of a drug store, was it not?
"A. Yes, sir.
 "Q. And this so-called restaurant was right across an alley from the drug store, was it not?
"A. Yes.
 "Q. And Mr. Waters was in the alley when he was arrested, wasn't he?
"A. Yes."
The favorable bias of a defense witness toward the defendant, or the unfavorable bias of the same towards the State, may be proven by evidence, on cross-examination, of statements, acts, relationships, or charges of crimes that reasonably give rise to an inference of the witness' bias. See: Tapscott v. State,18 Ala. App. 67, 88 So. 376 (1921); Woodall v. State,29 Ala. App. 75, 191 So. 407 (1939). See also: Gamble, McElroy'sAlabama Evidence (3d ed.), § 149.01 (9). And although the general bad testimonial character of such a witness is not provable by a showing that he has been arrested for or charged with a crime, the fact of the witness' arrest may reasonably be considered as inferring bias in the witness. McElroy, The Lawof Evidence in Alabama (2d ed.), § 149.01 (7); Anno: 20 A.L.R.2d 1440; McAdams v. State, 21 Ala. App. 193, 106 So. 622
(1925), and cases cited therein.
The cases in Alabama recognizing the exception for showing other crimes to prove bias have generally involved the fact situation where the witness had been charged with the same criminal act for which the accused was being tried. Willinghamv. State, 27 Ala. App. 363, *Page 366 172 So. 471 (1937). Though the bias rule has been limited to this type of fact situation by the cases, the limitation seems to have arisen by the repeated appearance of the fact situation itself, rather than from any well-defined policy which limits the rule. Hence, in this case, we are called upon to review the well-recognized wide latitude given the discretion of the trial judge in allowing evidence which might be "considered reasonably as indicating bias in the witness." The Law ofEvidence in Alabama, supra; Smith v. State, 15 Ala. App. 7,72 So. 593 (1916). "Bias of a witness can always be shown. Self-interest, or other bias of a witness, may be shown, and great latitude is allowed, on cross-examination, to elicit circumstances having a tendency to show bias or interest on the part of the witness such as might influence his testimony."McAdams, supra. We point out that the trial court's discretion in this matter is not subject to review unless extreme abuse is shown which resulted in injury to appellant. Smith, supra;Webster v. State, 19 Ala. App. 587, 100 So. 201 (1924), cert. denied, 211 Ala. 316, 100 So. 202 (1924).
Persuasive, though not binding, authority in this matter may be found in the cases of several jurisdictions. Under circumstances very similar to the immediate case, where evidence that the witness and defendant had at one time been arrested for a burglary was allowed, the Oregon Supreme Court in affirming stated, "There is no doubt that the state of feeling and relationship of a witness towards the party for or against whom he testifies may properly be shown, to be weighed with his testimony." State v. Bacon, 13 Or. 143, 9 P. 393
(1886). Similarly, the Illinois Court in People v. Mason,28 Ill.2d 396, 192 N.E.2d 835 (1963), said, ". . . [E]ven in jurisdictions where evidence of arrest or indictment is not ordinarily admissible to impeach credibility generally, the fact that a witness has been arrested or charged with a crime may be shown or inquired into where it would reasonably tend to show that his testimony might be influenced by interest, bias, or a motive to testify falsely. Anno. 20 A.L.R.2d 1421, 1440." See also: People v. Barr, 51 Ill.2d 50, 280 N.E.2d 708 (1972);State v. Moynihan, 164 Conn. 560, 325 A.2d 199, cert. denied,414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219 (1973). Thus, it is often held that while an arrest alone is not ordinarily admissible to impair the credibility of a witness, the fact that it might have embittered her so as to motivate her testimony in a particular manner may very well be relevant.United States v. Dardi, 330 F.2d 316 (2nd Cir.), cert. denied,379 U.S. 845, 85 S.Ct. 50, 13 L.Ed.2d 50 (1964).
The evidence of Lethia Speigner's and appellant's arrest in Eufaula was offered only as tending to show her bias. Appellant could have requested a charge limiting the effect of the evidence to showing bias only, but failed to do so. Stinson v.State, 41 Ala. App. 575, 142 So.2d 897 (1962), cert. stricken,273 Ala. 479, 142 So.2d 899. We find no prior cases specifically prohibiting such evidence in this factual setting. And, considering the wide latitude allowed the trial court upon rulings on cross-examination, we find no reversible error in the admission of the above testimony. See also: Johnson v.State, 199 Ala. 255, 74 So. 366 (1966); Stephens v. State,252 Ala. 183, 40 So.2d 90 (1949).
We have examined appellant's other assignments of error and find them to be without merit. A careful search of the record reflects no error properly reserved which injuriously affected the rights of appellant.
AFFIRMED.
All the Judges concur. *Page 367