The defendant was indicted and convicted for the offense of buying, receiving or concealing stolen property. Alabama Code 1975, Section 13-3-55. Sentence was four years' imprisonment.
 I
The defendant argues that the evidence presented at trial does not show that he had knowledge that the property was stolen.
To establish the offense of buying, receiving or concealing stolen property it must be proven beyond a reasonable doubt that (1) the property was stolen; (2) that the accused bought, received or concealed it; (3) knowing that it had been stolen; and (4) that the accused had no intention of returning it to the owner. Boyd v. State, 150 Ala. 101, 43 So. 204 (1907);Fulton v. State, 8 Ala. App. 257, 62 So. 959 (1913). Guilty knowledge or scienter may be inferred by the jury from the facts and circumstances surrounding the entire transaction.Vacalis v. State, 204 Ala. 345, 86 So. 92 (1920); Waters v.State, 360 So.2d 358 (Ala.Cr.App.), cert. denied, 360 So.2d 367
(Ala. 1978).
The guilty knowledge may be inferred from the unexplained possession of recently stolen property. Boyd, supra.
 "(P)ossession of recently stolen property gives rise to a permissible inference of knowledge on the part of the possessor that the property had been stolen, unless the possession thereof is accounted for in a reasonable and satisfactory manner consistent with the circumstances of the possession. Stanley v. State, 46 Ala. App. 542, 245 So.2d 827, cert. denied, 286 Ala. 738, 245 So.2d 828 (1970); Character v. State, 51 Ala. App. 589, 287 So.2d 916, cert. denied, 291 Ala. 775, 287 So.2d 919 (1973); Rhone v. State, 53 Ala. App. 338, 299 So.2d 781 (1974). The reasonableness of the explanation given by one in possession of recently stolen property is to be determined from all the circumstances, and, if reasonable people can come to a different conclusion on the subject, the question of whether the explanation is reasonable is one to be determined by the jury. Haynes v. State, 40 Ala. App. 106, 109 So.2d 738 (1958)."
Ford v. State, 383 So.2d 601, 603 (Ala.Cr.App. 1980).
The receipt of stolen goods under circumstances which would induce a man of ordinary observations to believe that they had been stolen may constitute evidence of guilty knowledge.Collins v. State, 33 Ala. 434 (1859). "(G)uilty knowledge may be inferred from the fact that the receiver purchased the goods for very much less than their value." Fulton v. State,8 Ala. App. 257, 263, 62 So. 959 (1913). The fact that the transfer of stolen property was made clandestinely or secretly may evidence a felonious intent, Boyd v. State, 150 Ala. 101,43 So. 204 (1907), as may the false denial by a receiver of stolen goods that he received the property. Fulton v. State,8 Ala. App. 257, 62 So. 959 (1913).
The issue of the failure of the State to present a prima facie case was raised for the first time in the motion for new trial. Consequently, in reviewing the question of the sufficiency of the evidence to support the conviction we may look to all the evidence presented at the defendant's trial and are not limited to only the evidence presented by the state in its case in chief. Compare James v. State, 339 So.2d 1047
(Ala.Cr.App.), cert. denied, Ex parte State ex rel. Atty. Gen.,339 So.2d 1052 (Ala. 1976).
Viewing the evidence in the light most favorable to the prosecution as we must, Johnson v. State, 378 So.2d 1164
(Ala.Cr.App.), cert. quashed, Ex parte Johnson, 378 So.2d 1173
(Ala. 1979), the testimony *Page 582 
shows that the defendant had a prior conviction for petit larceny and that he knew Willie Sledge and "occasionally" associated with him. Sledge also had a prior criminal record of which the defendant was aware. The evidence supports the finding that, the day after four guns were stolen from Mr. J.D. Christian, Sledge and Eugene Williams either sold or pawned one rifle and one shotgun to the defendant in exchange for $22.50 worth of pills (five pills consisting of "Talwin and Blues"). These two weapons had a fair market value of $125.00.
Although Williams told the defendant that the weapons were not "hot", it would be reasonable to conclude that the defendant at least suspected the weapons had been stolen because he asked if they were "hot". Sledge admitted on cross examination by defense counsel that "at times" he dealt in fencing hot merchandise.
The evidence also shows that the defendant returned the two weapons to Sledge who owed the defendant $26.50 for the "pawned" weapons. In a confession the defendant admitted that he returned the weapons on partial payment of the $26.50 because he had heard that the guns were stolen and wanted to get rid of them.
In his own defense, the defendant claimed that he held the weapons as security for a loan made to Sledge; that he did not give Sledge any pills; that Sledge had pawned other items to him in the past; that initially he had been assured by Sledge and Williams that the weapons were not hot; that after he overheard a conversation about some weapons having been stolen from Mr. Christian, he began looking for Sledge to return the weapons.
The resolution to the argument presented by the defendant is clear. The State's evidence proved and the defendant admitted having possession of recently stolen property. The defendant's intent and the reasonableness of his explanation of his possession of the property were matters only the jury could determine. Ford, supra; Johnson v. State, 349 So.2d 110
(Ala.Cr.App.), cert. denied, Ex parte State ex rel. Atty. Gen.,349 So.2d 113 (Ala. 1977). This is far from being a case where the jury's verdict is contrary to the great weight of the evidence and manifestly unjust. Under the facts, the jury's verdict is reasonable and supported by the evidence.
 II
We find no error in the opening remarks of the prosecutor. From the record:
 "MR. SUMMERFORD (Assistant District Attorney): Now, I mentioned to you in my opening statement that one of our witnesses would be a person with a criminal history, and I expect that our evidence will show Mr. Sledge, Jr. has an extensive criminal history, but of course I am sure you know criminals deal only with other criminals, and as a result the circumstances in this case require us —
 "MR. BIVENS (Defense Counsel): Your Honor, if the State expects the evidence to show that criminals only deal with criminals, then I am prepared to withdraw my objection. If they are not prepared to put that evidence on the witness stand, then, Your Honor, I tender my objection to this form of opening statement.
 "MR. SUMMERFORD: We intend to show in this case what happened.
 "THE COURT: Well just make your statement brief and please confine it to what you expect the evidence to show. I don't know what it will be, just confine it to what the record will show. You gentlemen know how I rule or have a pretty good idea.
 "MR. BIVENS: Your Honor, I would like to have a ruling on that objection.
 "THE COURT: Well, I don't know how to rule. I will just overrule, I suppose. I will just ask you to confine your remarks to what you expect the evidence to show, and you know what the evidence is.
 "MR. BIVENS: We take an exception to your ruling, Your Honor. That is improper.
"THE COURT: What do you mean it is improper? *Page 583 
"MR. BIVENS: I beg your pardon, sir?
"THE COURT: You said my ruling is improper?
"MR. BIVENS: No, sir. I was simply —
 "THE COURT: The opening statement is merely to let the jury know what you expect the evidence to be. I ask that you not argue the case or go beyond just what you expect the evidence to show, but go ahead, please." (Emphasis added)
In light of the State's evidence and the remarks of the trial judge, we find no error in this portion of the record despite the fact that the judge did overrule defense counsel's "conditional" objection.
The State's evidence proved that Sledge did in fact have an extensive criminal record of eight prior felony convictions and that he had known and "associated" with the defendant for "about two or three years", that the defendant sold Sledge some "pills", and that the defendant told Sledge that he was going to get Sledge some pills and "take care of" Sledge. On cross examination of Sledge, defense counsel elicited testimony that showed that Sledge and the defendant were friends; that the defendant had loaned Sledge money before; that Sledge "at times" dealt in "fencing hot merchandise"; that Sledge could not buy the pills he got from the defendant at the store; and that Eugene Williams had also gotten some pills from the defendant. The State also proved, in its case in chief, that the defendant knew that the guns had been stolen and gave them back to Sledge on a "partial payment" of the loan or pawn because he did not want to get caught.
The propriety of counsel's argument to the jury depends on the particular issues, facts and atmosphere of each case.Bryson v. State, 264 Ala. 111, 84 So.2d 785 (1956).
In his opening statement the prosecutor may and should "state to the jury the case as he proposes and expects to present it to them on the evidence." Mann v. State, 134 Ala. 1, 18,32 So. 704 (1902). "At most these preliminary statements . . . are tentative and intended to give the jury a general grasp of the case that they may be the better able to understand and apply the facts as they are developed in the course of the trial; and they constitute no evidence of the facts nor in any sense take the place of evidence." Mann, 134 Ala. at 18.
While we find that no reversible error was committed in this particular case, argument touching matters of common or general knowledge is not without bounds or restrictions.
 "Even though evidence of such facts has not been formally introduced, it is proper for counsel to argue to the jury matters of common knowledge or matters of which the court will take judicial notice, to refer to well-known facts in history, literature, science, and the public press by way of illustration and ornament, or to read extracts from general histories for the purpose of refreshing the memory of the court as to something it is supposed to know. However, it is improper in argument, even by way of illustration, to refer to facts which are merely matters of general belief and common opinion, rather than of established history. The same is true as to appeals by counsel to the common knowledge and experience of the jurors themselves, although counsel is allowed a reasonable latitude of speech in this respect without being open to the charge of having abused his privilege to the injury of the opposing party."
75 Am.Jur.2d, Trial Section 252 (1974).
Much is left to the discretion of the trial judge in limiting the latitude argument may take. Our review convinces us that this discretion was not abused in this particular case in light of the judge's comments and remarks in overruling the objection.
 III
The defendant's third and final contention is that the trial judge's instructions to the jury concerning reasonable doubt were so confusing and misleading that the jury was unable to reach a "fair and unprejudiced verdict."
The charge of the trial judge regarding the law of reasonable doubt contains correct legal principles and is stated without error. *Page 584 
Defense counsel stated that he had no exceptions to the court's oral charge to the jury. Our review convinces us that any alleged confusion in the collective mind of the jury was caused by the six written charges requested by the defendant and given by the trial judge. The confusion resulted from the defendant's use of the following terms in his requested charges: reasonable doubt, fair and reasonable conclusion, reasonable hypothesis, reasonable grounds, reasonable explanation. The record clearly supports this explanation.
 "MR. BIVENS: Your Honor, the only problem I have right now is that one of the jurors has said concerning the instructions to the jury and said this in front of the jury that none of these charges that were given by you contained the words reasonable doubt. Now, charge number one says reasonable doubt.
 "THE COURT: Excuse me, let me interrupt. I said that several times.
 "MR. BIVENS: Yes, sir, charge number two clearly says reasonable doubt. Charge number three says reasonable conclusion. It does not say reasonable doubt, but it says reasonable conclusion. Charge number four says reasonable doubt in two places. Charge number five says reasonable doubt and also says reasonable grounds.
 "MR. SUMMERFORD: Your Honor, it is my impression, I think what he meant to say was reasonable grounds. I think that is what he is referring to when he said reasonable doubt. I don't think he is talking about the burden of proof. I think he is talking about reasonable grounds for believing that the property was stolen. I know he used the words reasonable doubt. That was the impression I got.
 "MR. BIVENS: Well, I am concerned that some of the other jurors may have gotten the other impression. I hate to keep having you to explain things to the jury, but I am concerned that maybe the charges you gave them, they do not understand.
 "THE COURT: John, I feel like I have already done all I can. You all may except. If you can, be specific as to your exception. I have used that word reasonable doubt. I get the impression they are hung up on the word reasonable, and perhaps they are, but I just can't say much more, I don't think. Do you want to except to anything? You may do so.
 "MR. BIVENS: I feel I must except, Judge. I think you have done your job on it."
Initially we note that defense counsel excepted after acknowledging that the trial judge had "done his job." If this is so, then why does counsel object and what further action could or should the trial judge have taken? We also note that the defendant cannot predicate error on confusion caused by the particular wording of his own written requested charges. An accused cannot "invite" error and then seek to profit thereby.Aldridge v. State, 278 Ala. 470, 179 So.2d 51 (1965).
There is nothing in the record to indicate that any of the jurors were still confused after the trial judge answered their questions.
We have searched the record and found no error prejudicial to the defendant. The judgment of the Circuit Court is affirmed.
AFFIRMED.
All Judges concur.