LONG, Judge.
The appellant, Harlan H. Cooper, was convicted of receiving stolen property in the first degree, §§ 13A-8-16 and 13A-8-17, Ala. Code 1975,[1] and was sentenced as a habitual offender to 15 years’ imprisonment. He raises two issues on direct appeal from his conviction.[2]
Evidence adduced at trial revealed the following. The stolen property, a Johnson GT 150 outboard boat motor, was seen in the appellant’s possession by Charles Findley approximately 15 months after the owner, Harold Michael Gunnison, reported to Fairhope police that it had been stolen from his garage in a break-in that occurred while Gunnison was out of town.[3] Findley, an acquaintance of Gunnison, had seen the motor attached to the appellant’s boat while he was on a Memorial Day outing in May 1993 and had recognized it as the motor that had been stolen from Gunnison in February 1992. Findley testified that when he encountered the appellant on that occasion, the appellant had said to him, in what Findley considered to be a boastful manner, “Well, what do you think of Gunnison’s motor? I’ve got only two thousand dollars in it.” (R. 213, 242.) Findley reported the matter to the police. However, several months passed before police questioned the appellant specifically about the provenance of the motor.
A police officer who testified at trial estimated the value of the motor at the time of its theft to be approximately $4,000. Gunni-son testified that he did not know the appellant.
Other testimony revealed that in July 1993, the appellant sold his own boat, with the stolen motor attached, to Paul Lay. Police subsequently seized the motor from Lay, informing him that it had been stolen from Gunnison. The label containing the motor’s serial number had been removed from the outside of the motor, although officers were able to ascertain the serial number by removing the engine plug. The serial number identified the motor as Gunnison’s. Lay testified that when he bought the boat and motor from the appellant, the appellant had assured him that they were not stolen. Tes *24 timony from an investigating officer indicated that police believed Lay to be an innocent party.
In a statement given to police, the appellant maintained that he had purchased the motor from a man named James Arnold, whom he claimed to have met on the river during a fishing tournament. The appellant later produced for police what he purported was a bill of sale from Arnold. Investigators, however, were unsuccessful in efforts to locate James Arnold. The appellant denied knowing that the motor had been stolen.
Trial testimony also revealed that in August 1993, after the police investigation had focused on the appellant, the appellant went to Charles Findley's residence and threatened Findley and his family and friends. Findley testified that during this incident, the appellant “got right up in my face and he told me that I was the only one that had a problem with Gunnison's motor.” (R. 217.) The appellant then physically assaulted Find-ley.[4]
Testimony also indicated that some three months before Findley saw the motor in the appellant’s possession — approximately 12 months after the motor was stolen from Gun-nison — the appellant told Gerald Giddins that he was “getting” a Johnson 150 (horsepower) motor for his boat. (R. 366-67.)
Much of the appellant’s defense at trial consisted of attempts to suggest that Gunni-son’s motor had not actually been stolen but that Gunnison had conspired with other parties to have the motor and his other property taken from his garage in a phony “burglary” as part of a scheme to defraud Gunnison’s insurer.
I.
The appellant contends that the trial court erred to reversal by instructing the jury concerning the presumption of scienter that arises where the accused is found in possession of property that has been recently stolen. He argues that the lapse in time between the taking of the boat motor and Findley’s discovery of it in his possession was too great to permit such a presumption.[5]
“The requisite scienter for [the] crime [of receiving stolen property] may be inferred from possession of recently stolen goods. Rhone v. State, 53 Ala.App. 338, 299 So.2d 781 (1974). While the possession of recently stolen property does not raise a presumption as a matter of law as to the possessor’s guilt, it does raise a presumption as a matter of fact to be passed upon by the jury. Milligan v. State, 45 Ala.App. 112, 226 So.2d 172 (1969).
“The term ‘recently stolen,’ by its very nature, is relative in concept — both as to the passage of time and the type of property involved. It is determined upon the facts of each case and, depending upon the particular circumstances, may vary from a few days to many months. Haynes v. State, Ala.Cr.App., 335 So.2d 203 (1976). The remoteness has regard additionally to the particular factors and considerations surrounding each case. Hence, it is not feasible to state a fixed rule with reference to the element of time lapse. Smitherman v. State, 33 Ala.App. 316, 33 So.2d 396 (1948). Remoteness of time affects weight rather than admissibility. Yet, as Smith-erman points out, evidence must not be so remote in point of time as to be totally without causal connection or logical relation to the criminal act involved.”
Waters v. State, 360 So.2d 358, 361-62 (Ala.Cr.App.), cert. denied, 360 So.2d 367 (Ala.1978). See Wasp v. State, 647 So.2d 81, 83 (Ala.Cr.App.1994).
In Waters, supra, the defendant was found in possession of a phonograph some 16 months after it had been reported stolen in a burglary. While recognizing that the 16-month time lapse was lengthy, this Court deemed it appropriate, for purposes of assessing remoteness in time, to consider other relevant evidence connecting the defendant’s possession of the stolen property to its theft 16 months earlier. Holding that the proper *25 ty found in the defendant’s possession had been stolen sufficiently recently to allow for a presumption of scienter, we stated:
“The time lapse of some sixteen months involved in the immediate case, if standing alone, might well fall within the excessive time cautioned against in Smitherman. However, [prosecution witness] Crane’s evidence of appellant’s actual possession of the stolen phonograph sixteen months after the fact must be considered in light of other relevant evidence. Thus, when considered first with the evidence introduced as to appellant’s actual or constructive possession of other stolen items which were identified by Luckfield [the property’s owner and burglary victim] as being stolen in the same burglary (some of which were found in an apartment where Waters and his girlfriend Lethia Speigner lived) and secondly with his own confession that police ‘had him cold,’ the possession clearly bears a causal connection and logical relation to the Luckfield burglary from which the jury could well infer scienter.”
Waters, 360 So.2d at 362.
The evidence in this case established that Findley saw the appellant in possession of the stolen motor some 15 months after it had been stolen from Gunnison’s garage. Other relevant evidence connecting the defendant’s actual possession of the stolen motor to the time of its theft included the appellant’s references to the motor, in his statements to Findley, as “Gunnison’s motor.” (R. 213, 217.) Additionally, evidence indicated that approximately 12 months after the motor was stolen from Gunnison, the appellant had stated that he was “getting” a boat motor of the same brand and horsepower as the one stolen from Gunnison. We find that the appellant’s actual possession of the motor, when considered with this other evidence, bears a sufficient causal connection and logical relation to the theft of the motor 15 months earlier from which the jury could infer scienter.[6] Under the standard set out in Waters, then, the motor found in the appellant’s possession had been stolen sufficiently recently to allow for a presumption of scienter. The trial court did not err by instructing the jury concerning that presumption.
II.
The appellant contends that the trial court erred in denying his motion for a judgment of acquittal. A motion for a judgment of acquittal tests the sufficiency of the evidence. Committee Comments, Rule 20.1, Ala. R.Crim.P.
There was ample evidence presented that the appellant possessed property that he knew to have been stolen.
‘““The possession of recently stolen property by the accused places upon him the burden of explaining that possession to the satisfaction of the jury.... ‘Whether the explanation offered is credible or satisfactory is a question for the jury.’ ” Carlisle v. State, 465 So.2d 1205, 1206 (Ala.Cr.App.1984) (citations omitted). “The reasonableness of the explanation given by one in possession of recently stolen property is to be determined from all of the circumstances, and, if reasonable people can come to a different conclusion on the subject, the question of whether the explanation is reasonable is one to be determined by the jury.” Ford v. State, 383 So.2d 601, 603 (Ala.Cr.App.1980).’
“McClellan v. State, 628 So.2d 1026, 1029 (Ala.Cr.App.1993). The accused’s knowledge that the property was stolen may be proved by his declarations and admissions. Cf. Shaneyfelt v. State, 494 So.2d 804, 806 (Ala.Cr.App.1986) (“ ‘the accused’s knowledge of the presence of the controlled substance may be proved by ‘his declarations, or admissions, and contradictory statements, and explanations made by him’ ”).
“ ‘ “In most cases there is no direct testimony of the receiver’s actual belief. Proof thereof must therefore be inferred from the circumstances surrounding his receipt of the stolen property.” [W.] LaFave [ & A Scott, Criminal Law 686 (1972)]. Guilty knowledge may be inferred from all the facts and circumstances surrounding the entire transac *26 tion concerning the accused’s acquisition of the stolen property. Tombrello v. State, 431 So.2d 1355, 1357 (Ala.Cr.App.1983); Tyree v. State, 407 So.2d 580, 581 (Ala.CrApp.1981). “‘[G]uilty knowledge may be inferred from the fact that the receiver purchased the goods for very much less than their value.’ Fulton v. State, 8 Ala.App. 257, 263, 62 So. 959 (1913).” Tyree, 407 So.2d at 581. “[A] very inadequate purchase price is a factor which points towards appellant’s guilt.” Fillmore v. State, 647 S.W.2d 300, 303-04 (Tex.App.1982).’
“Ashurst v. State, 462 So.2d 999,1004 (Ala.Cr.App.1984). See also Sankey v. State, 568 So.2d 366, 369 (Ala.Cr.App.1990).”
Wasp, supra, 647 So.2d at 82-83.
The evidence, when viewed most favorably to the state, clearly established that the appellant possessed a stolen boat motor. The appellant’s statements to Findley referring to the motor as “Gunnison’s motor,” moreover, reflected the appellant’s knowledge of the motor’s owner, when other evidence showed that Gunnison did not even know the appellant, had not sold the motor to the appellant, and had reported the motor stolen in a burglary. Additionally, the appellant appeared to Findley to be bragging about the inordinately low price he had paid for the motor, again suggesting the appellant was aware of the property’s illicit source. The explanation that the appellant initially offered to police for his possession of the motor — i.e., that he had purchased it from “James Arnold” — was not credible. Finally, there was satisfactory evidence that the value of the motor exceeded $1,000, an element necessary to sustain a conviction for receiving stolen property in the first degree. § 13A-8-17, Ala.Code 1975. The trial court correctly denied the appellant’s motion for a judgment of acquittal.
For the reasons stated above, the judgment of the trial court is affirmed.
AFFIRMED.
All Judges concur.

.Section 13A-8-16(a), Ala.Code 1975, provides:
“A person commits the crime of receiving stolen property if he intentionally receives, retains or disposes of stolen properly knowing that it has been stolen or having reasonable grounds to believe it has been stolen, unless the property is received, retained or disposed of with intent to restore it to the owner.”
Section 13A-8-17(a), Ala.Code 1975, provides:
"Receiving stolen property which exceeds $1,000.00 in value constitutes receiving stolen property in the first degree.”

. The appellant was also convicted of harassment in the same proceeding. See § 13A-11-8, Ala. Code 1975. However, he presents no claims on appeal concerning that conviction.

. Investigators discovered that a garage window had been broken. The garage door had apparently been opened from inside. Also stolen from the garage were Gunnison’s 17⅜ foot bass boat, a boat trailer, and various tools belonging to Gun-nison. The day following the break-in, Gunni-son’s boat — without its motor — and the boat trailer were found burned in a landfill.

. The harassment charge against the appellant arose out of this altercation.

. Section 13A-8-16(b)(2), Ala.Code 1975, provides:
"If a person ... [possesses goods or property which have been recently stolen ..., this shall be prima facie evidence that he has the requisite knowledge or belief.”

. This is not to say that the appellant was involved in the actual theft of the motor, but rather that at the time he was in actual possession of the motor, he knew that the motor had been stolen from Gunnison.