41 So.2d 420

## HENDRICKS v. STATE.

### 2 Div. 783.

Court of Appeals of Alabama.
Nov. 16, 1948.

Rehearing Denied Dec. 14, 1948.

Reversed and Remanded on Mandate
June 21, 1949.

A. A. Carmichael, Atty. Gen., and Hugh F. Culverhouse, Asst. Atty. Gen., for the State.

Thos. F. Seale, Jr., of Livingston, and Jas. S. Coleman, Jr., of Eutaw, for appellant.

**CARR, Judge.**

The defendant below was indicted, tried and convicted on a charge of stealing a cow, the property of J. B. King.

One of the prime insistences on this appeal is that there is a failure in the proof to identify the cow, which the evidence tended to show the accused had in his possession, with the animal which Mr. King found to be missing.

It is a legal truism that proof of this fact constitutes a material link in the chain of evidence in cases of instant concern. Hopkins v. State, 25 Ala.App. 399, 147 So. 210.

The appellant rested his case when the State concluded its evidence in chief, and made a motion to exclude the evidence. This practice is approved in criminal cases. Underwood v. State, 33 Ala. App. 314, 33 So.2d 379; Wallace v. State, 16 Ala.App. 85, 75 So. 633.

The general affirmative charge was also tendered by the defendant and refused by the court.

Mr. King testified that on or about March 5, 1948, he missed a cow from a pen

in his stockyard in the city of Eutaw, Alabama. In describing the cow he testified:

"Q. And what kind of cow was this? A. She was a red Jersey cow.

"Q. Do you remember her coloring? A. It was jersey, fawn color."

The evidence is silent as to whether or not he ever saw the animal after its disappearance from the pen.

David Peterson lived in the vicinity of the stockyard. He testified that on the day indicated above, at about six o'clock in the forenoon, he saw the defendant coming down the road near witness' home with a "light cow" and that defendant "turned and tied him up by some cord wood, and he left and went on up by the houses." The witness stated further that he did not see the accused come out of the stockyard with the cow.

George Carter was also indicted for complicity in the alleged crime. This witness related the contents of two conversations which he claimed to have had with the appellant. The first of these was about eleven o'clock A.M. on Friday, March 5th. We quote from the record:

"A. He told me to take the cow and pasture it for him. He asked me did I have a place to take care of the cow, and I said I did, and he told me he had this cow tied out down there to a bush and to go and get it, and he turned and goes back, and we didn't have another word. He goes back to work and I goes home and get my horse and come back down at twelve o'clock and takes the cow down the railroad.

"Q. Where did you take her? A. To my pasture.

"Q. Where did you get her from? A. Down from Minnie Mack's house by Curtis Cafe, tied to a little bush."

The second conversation was on the following Monday. Here the witness testified:

"A. I asked him about it, and he said, 'I heard down there at the stock yard this cow was taken down there, and when they was talking and I walked around they quit talking. About that time Mr. Lee beckoned to me, and he walked off, and I didn't get

to see him any more until that Wednesday over here, and Mr. Lee went down and got him."

So far as the record discloses, the accused at no time told Carter that he (the accused) had gotten the cow from the stockyard.

On direct examination Carter answered this question in the affirmative: "I believe you were also indicted by the grand jury involving this cow, is that correct?"

A very careful study of this comparatively short record discloses that we have herein detailed all the tendencies of the evidence which must form a basis for a decision on the question before us.

The Assistant Attorney General observes in brief: "It would thus appear that at no time during the trial was there any question as to the identity of the animal in question. Both the appellant and the State were in full accord as to the identity of the animal which was the subject of larceny."

The appellant's attorney seemed to have sensed the fact that the State had omitted to make proof of this material evidence. This is evinced by noting that he posed this point as a specific ground of his motion to exclude the evidence.

Whatever may have been in the minds of the parties, as to the actuality of the essential facts, could not have replaced nor supplied the necessity of making proof of the fact.

■ We are led to the inevitable conclusion that the motion to exclude the evidence should have been granted or that the general affirmative charge was due in defendant's behalf.

There are a few other questions presented by the record which merit treatment. We will respond briefly to these.

■ Unquestionably, if the witness Peterson saw the defendant in possession of the cow after its disappearance from the stockyard pen and this fact was established by the required proof, this would be suffi-

cient corroboration of the accomplice under the applicable doctrine.

█ Over appellant's objections the sheriff was permitted to testify in the case after he had been excused from the rule which was enforced against the other witnesses. This was clearly a matter which addressed itself to the discretion of the trial judge. There is certainly no abuse here apparent. McKenzie v. State, 26 Ala. App. 295, 158 So. 773; Wright v. State, 1 Ala.App. 124, 55 So. 931.

On cross examination the witness Peterson was asked this question: "But it could have been somebody else?" The court sustained the State's objection to the query.

█ The witness had testified on direct examination that in his best judgment it was the defendant who had a "light cow." By the above question it was sought to test the accuracy of his identification of the accused. We agree with the insistence of appellant's counsel that the right of searching cross examination was due to be accorded. However, this privilege is never extended to include the posing of questions which are improper in form. This is a matter which comes within the discretionary power of the trial court, and error will never be charged unless it is made clear that the discretion was abused. Harbin v. State, 15 Ala.App. 57, 72 So. 594; Cox v. State, 162 Ala. 66, 50 So. 398.

The writer entertains the view that the judgment below should be reversed and the cause remanded to the nisi prius court. My associates concur in the order of reversal, but are of the opinion that judgment should be here rendered discharging the defendant.

In conformity with the majority view, it is therefore ordered that the judgment in the court below be reversed and judgment is here rendered, discharging the appellant.

Reversed and rendered.

PER CURIAM.

Reversed and remanded on authority of Hendricks v. State, 252 Ala. 305, 41 So.2d 423.