321 So.2d 261

**Albert HOUSTON**

**v.**

**STATE.**

**3 Div. 387.**

Court of Criminal Appeals of Alabama.

Oct. 21, 1975.

Joseph T. Carpenter, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Houston was tried and convicted of burglary and sentenced to the penitentiary for a term of two years. He was represented at arraignment and trial by court-appointed counsel. He pleaded not guilty. He gave notice of appeal and was furnished a free transcript. He is represented in this court by new counsel.

Omitting the formal parts the indictment reads as follows:

"The Grand Jury of said County charge that, before the finding of this indictment, ALBERT HOUSTON, alias ALBERT LEE HOUSTON, alias ALBERT McCREE, alias O. L. HOUSTON, alias A. L. HOUSTON, alias ALBERT L. HOUSTON, whose name is to the Grand Jury otherwise unknown, with intent to steal, broke into and entered the shop, store or warehouse of Alabama Fertilizer Corporation, a corporation, in which goods, wares, merchandise or things of value, were kept for use, sale or deposit, against the peace and dignity of the State of Alabama."

Mr. Charles Scheuerman, owner of the Alabama Fertilizer Company, a corporation, went to mail a letter on Sunday, January 20, 1974, and stopped by the office of his company. He saw a white Ford parked by the building where he kept fertilizer. The trunk of the Ford was open and he started to the car. He did not see anyone in the car. At this point his attention was attracted to the door of the warehouse. He saw two black males swinging the sliding door from the bottom and propping the door open with a big rake. He stated the door had to be opened from the inside. He went immediately to his office and called the police department. The police arrived within five minutes after they were called.

He further testified that when he saw the two Negroes inside the warehouse propping the door open with the rake, he did not recognize them at that moment. When the police patrol car arrived, he observed the two adult Negroes and a teen-age Negro boy running from the door of the warehouse to the white Ford. He heard the police say, "there they are," and drove the patrol car toward the white Ford. The three Negroes got in the Ford and started driving away. They drove a short distance and got stuck in the mud. When the officers got to the Ford car, they ordered the occupants out and searched them for weapons. Mr. Scheuerman recognized one of the Negroes, Ward Cleveland. Cleveland had worked for him off and on for many years. The time was 2:30 in the afternoon and Mr. Scheuerman got a good look at the trio and made a positive in-court identification of appellant as one of the men who helped Cleveland prop the door open to the warehouse where he kept his fertilizer.

At the time of appellant's trial Cleveland had already pleaded guilty to burglary and had been sentenced to the penitentiary. The teen-age boy had been turned over to the proper authorities.

Officer Allan Bowen of the Montgomery Police Department and his partner Officer Lashley answered Mr. Scheuerman's call and were the first officers to arrive at the scene. They went to the white Ford and Officer Lashley ordered the occupants out of the car. He had to order them to get out three times. The driver got out first followed by the other two. The officers walked them to another patrol car occupied by Officers Summers and Wingard who had gotten the original call. The white Ford was owned by appellant but he was sitting in the middle on the front seat when they were ordered by the police to get out of the car.

Officer Bowen identified appellant at his trial as one of the men he and Lashley ordered out of the white Ford.

Officer W. D. Summers, Jr. testified that when he and Officer Wingard arrived at the burglary scene, they took custody of the three men being held by Officers Bowen and Lashley. It was raining and Officer Summers took the three men around to

the front of the building to get them out of the rain where he read them their rights from a *Miranda* card he had in his possession. He stated that appellant was talking to Cleveland and he had to stop them from talking to be sure they heard and understood the *Miranda* warnings. This officer did not interrogate the three men but turned them over to Detectives Lisenby and Shirley who were dispatched to investigate the burglary. Detective Lisenby was present when Officer Summers was reading the *Miranda* warnings and he asked appellant if he understood those rights and appellant said he did. Detectives Lisenby and Shirley assisted the other officers in transporting the arrested persons to the Detective Division at police headquarters.

At the Detective Division office Detective Lisenby re-read appellant his rights from a printed card and asked him if he understood his rights and he said he did. Lisenby read him a waiver of rights form but he refused to sign it saying a lawyer had told him never to sign anything. Appellant said he didn't want a lawyer but he would tell the truth about what happened. Detective Lisenby suggested to appellant that Lisenby write down what appellant had to say and appellant stated he would not make any statement if the detective was going to make notes while he was talking.

Two voir dire examinations were conducted out of the presence and hearing of the jury. At the conclusion of these hearings the court determined that appellant's confession was freely, knowingly, intelligently and voluntarily made. After the proper predicate was laid Detective Lisenby was permitted to relate to the jury appellant's statement to him concerning the burglary.

From the record:

"Q. (By Mr. Branch) What did he tell you at that time?

"A. He said that he and Ward Cleveland had been on Council Street at some house, and this young black male, aged fourteen, was with him and driving his car.

"Q. Driving the Defendant's car?

"A. Yes, sir.

"Q. Okay.

"A. That he drove the Defendant and Ward Cleveland down to Alabama Fertilizer.

"Q. Okay. Now, prior to the time they went down to Alabama Fertilizer, did he tell you about any arrangement with regard to any fertilizer?

"A. Yes, sir.

"Q. What did he say?

"A. He said that Ward Cleveland was to get fifteen bags of fertilizer and that he was to get fifteen bags of fertilizer.

"Q. All right. And then what happened?

"A. They went to Alabama Fertilizer and drove around back of the plant and got out and went to the door that is only secured by, I believe, a bolt being on a hasp inside. They put the juvenile inside and removed the bolt—

"Q. Now, let's see. I didn't understand that.

"A. —The juvenile went in and removed the bolt.

"Q. Did he tell you how he got inside and removed the bolt?

"A. Yes, sir. They held the door back far enough, is my recollection, that he could get in. He was a real small person.

"Q. And he slid in the door?

"A. Yes, sir.

"Q. All right.

"A. After the bolt was removed, they pulled the sliding door up from the bot-

tom and placed some type of long handle to prop it open and went inside.

"Q. All right. Did he admit to you that he went inside?

"A. Yes, sir.

"Q. And he admitted to you that he and the other person, Ward Cleveland, had a prearranged plan to steal a total of thirty bags of fertilizer?

"A. Yes, sir."

When the state rested, appellant made a motion to exclude the state's evidence on the ground the state had failed to make out a prima facie case. This motion was overruled and denied.

Appellant took the stand as the sole defense witness and denied ever getting out of his automobile at the warehouse. He denied any intention to steal fertilizer and denied having been read his rights at the scene of the crime. He denied making any incriminating statements to any detective.

He further testified that he had arthritis and that a friend had told him that he could mix a wild root with whiskey and make a good medicine for his arthritis, that Ward Cleveland told him that he had a pint of whiskey at the warehouse of the Alabama Fertilizer Company where he was employed and that he could have that whiskey for his arthritis. That he, Ward Cleveland, and a juvenile drove to the warehouse to get the whiskey. He stated that Cleveland and the juvenile got out of the car to go in the warehouse to get the whiskey and that he never got out of his car until the police arrived.

■ Where the evidence raises questions of fact for the jury, and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion to exclude the state's evidence does not constitute error. *Young v. State,* 283 Ala. 676, 220 So.2d 843.

■ To constitute burglary, it is not necessary that a theft be actually committed. *Waid v. State,* 39 Ala.App. 255, 97 So.2d 598; *Wicks v. State,* 44 Ala. 398; *Jackson v. State,* 52 Ala.App. 667, 296 So. 2d 753.

■ Whether one gains or profits from the burglary is of no significance. *Davis v. State,* 283 Ala. 686, 220 So.2d 860; *Jackson v. State,* supra.

Appellant urges a reversal on the ground that his confession was not shown to be voluntary.

■ An extrajudicial confession, oral or written, is prima facie involuntary and inadmissible, and the duty rests in the first instance on the trial court to determine whether the confession is voluntary, and unless it so appears, it should not be admitted. *Myhand v. State,* 259 Ala. 415, 66 So.2d 544; *Duncan v. State,* 278 Ala. 145, 176 So.2d 840, 855, 856.

As we have pointed out appellant was given the *Miranda* rights and warnings on two occasions before he made an oral confession to Detective Lisenby, and the trial court conducted two voir dire hearings out of the presence and hearing of the jury before concluding the confession was voluntary.

■ The state laid the proper predicate for the introduction of the inculpatory statement. We hold that appellant knowingly and intelligently waived his right to counsel, and knowingly and voluntarily made the confessory statement. *Embrey v. State,* 283 Ala. 110, 214 So.2d 567; *Luschen v. State,* 51 Ala.App. 255, 284 So.2d 282; *Jones v. State,* 292 Ala. 126, 290 So. 2d 165; *Guenther v. State,* 282 Ala. 620, 213 So.2d 679.

The judgment of conviction is affirmed.

Affirmed.

All the Judges concur.