Ronald Smith was indicted for "receiving stolen property in the second degree" in violation of § 13A-8-18, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment." After dismissing the jury, the trial court had a lengthy discussion with counsel over the issue of sentencing appellant under the Habitual Felony Offenders Act, § 13A-5-9, Code of Alabama 1975. Since there was much dispute as to the adequacy of notice to appellant that he would be sentenced under the recidivist statute, the trial court postponed sentencing until several weeks later, at which time the trial court, in light of evidence adduced at the sentencing hearing and § 13A-5-9, Code of Alabama guidelines, sentenced appellant to imprisonment in the penitentiary for a term of twenty years.
On May 7, 1980, an automobile was broken into and numerous items of clothing, shoes, an attache case, a valise case, a pager, a small calculator, and a large suitcase were stolen from within. This property belonged to one Mr. Warren Brook, who discovered and immediately reported the theft around 7:30 p.m. that evening.
Officer Gary Renn Childs of the Birmingham Police Department responded to the victim's call. Officer Childs took a full report of the theft, after which he and the victim searched the vicinity for clues and for the missing goods. They found nothing except a metal pipe which apparently was used to break open the rear window of the car and some fresh blood on the seat of the car leading them to believe that the thief cut himself during the burglary.
With nothing else to go on, the two men left the scene and Officer Childs returned to his routine patrol.
A short time later about one block (diagonally) from the scene of the crime, Officer Childs observed appellant carrying a suitcase that fit the description of the one stolen from Mr. Brook. Childs stopped appellant who stated he had just come into town on a bus. Appellant consented to Child's request to see the contents of the suitcase. Upon finding several other items that fit the descriptions given by Mr. Brook, some of which had traces of blood on them, Officer Childs arrested appellant and read him his Miranda rights.
Appellant told Childs that he didn't steal the goods but instead had acquired them from a man named "Shorty". Appellant took Officer Childs to a nearby playground where the rest of the goods were recovered. "Shorty" had, apparently, absconded.
On the way to the police station appellant told Officer Childs that he had suspected that "Shorty" had stolen the merchandise but that he, appellant, had nothing to do with the theft itself. Officer Childs had already checked appellant's hands and arms and had found no cuts or abrasions to indicate that he had broken into the automobile.
That night Mr. Brook was summoned to the police station, where he identified the merchandise, including the goods that appellant had at the time of his arrest, as his property stolen from the automobile.
The following day Sergeant Phillip Tipton of the Birmingham Police Department met appellant, read him the Miranda rights again, and read him the waiver form which appellant then read and signed. Subsequently, without any threats, coercion, intimidation or inducement by Sergeant Tipton, appellant repeated to Sergeant Tipton that he, appellant, had taken the goods from "Shorty" even though he suspected that they were stolen. Appellant's complete statement was transcribed and then read and signed by appellant and witnessed by Sergeant Tipton.
All of the above evidence was introduced during the trial of this case, including both the oral and written statements by appellant to police officers. The two statements were admitted over appellant's motion to suppress, which was based on the grounds that they were improperly extracted from appellant.
After the state's case was completed, appellant moved for dismissal for failure to prove the elements of "receiving stolen *Page 254 
property in the second degree." This motion was denied and the defense rested without offering any evidence on appellant's behalf.
The jury found appellant "guilty as charged."
Sentencing was postponed to give appellant more time to respond to sentencing under the Habitual Offender Act. At the sentencing hearing, the state introduced evidence of four prior felonies, one of which was arguably insufficient because the record did not show that appellant was represented by counsel.
On the basis of the other three prior convictions and the jury verdict in the instant case, the trial court sentenced appellant to twenty years' imprisonment. This appeal followed.
 I
The indictment contained appellant's alias, "Wayne Hardy", which was read, in due course, to the jury. Appellant contends that this was reversible error in that any mention of an alias to the jury is highly prejudicial to a defendant, especially where he elects not to testify on his behalf. Appellant cites no authority and we can find none to support this contention.
The indictment was read to the jury in its entirety and the trial court instructed the jury as to the insignificance of the alias listed. (R.31).
In a similar case this court ruled that even the alias, "Hitler", when read to the jury did not constitute prejudicial error. Harris v. State, 48 Ala. App. 723, 267 So.2d 512 (1972). In keeping with this rule we find that the mere introduction to the jury of a name (here "Wayne Hardy") by which appellant is in fact otherwise known, will not be cause for reversal.
 II
Appellant also contends that the trial court erred in denying his motion to suppress the appellant's oral and written statements in which he admitted that he suspected the property in question was stolen. Appellant's argument is that these statements were coerced by the police officers under circumstances that made these statements involuntary and, therefore, inadmissible. Houston v. State, 56 Ala. App. 295,321 So.2d 261 (1975).
Having reviewed the evidence, we find nothing to indicate that the appellant's statements were other than freely, intelligently and voluntarily given. Appellant had been lawfully arrested and properly informed of his Miranda rights. He did not offer any testimony to refute the testimony of the two police officers who took the respective statements independently of each other. Each officer testified that the statement he took was given without threats, coercion, intimidation or inducement and only after the Miranda warnings were explained. Based on the evidence we hold that both statements, which were consistent with each other and uncontroverted, were properly admitted. Houston v. State, supra; and cases cited therein.
Furthermore, even if these incriminating statements had been ruled inadmissible, the circumstances were such as to convince a jury that the appellant had the "requisite knowledge" to be guilty of the crime of "receiving stolen property." See Goodmanv. State, Ala.Cr.App., 401 So.2d 208, 1981, and cases cited therein.
 III
At the end of the voir dire examination of the arresting officer, the appellant moved to suppress the state's evidence seized at the time of the arrest on the grounds that the arresting officer lacked "probable cause" for arrest. The trial court's denial of this motion is asserted as error.
 A
Appellant argues that since he was not "acting suspicious" and did cooperate fully with the investigating officer, there was no "probable cause" or "reasonable grounds" for a lawful arrest. Consequently, *Page 255 
he argues that the "search and seizure" of the suitcase and its contents were not "incident to a lawful arrest" and should have been excluded by the trial court.
The logical extension of this argument by appellant would be that a perpetrator of a crime can avoid arrest, search and seizure, (and, therefore, evade the law) as long as he doesn't act "suspicious" and instead cooperates with the authorities, in spite of the surrounding circumstances.
Such a rule would be unreasonable and unworkable in law.
The proper rule to apply in this case is set out in §15-10-3, Code of Alabama 1975, which reads:
 "An officer may arrest any person without a warrant, on any day and at any time, for:
 "(1) Any public offense committed or a breach of the peace threatened in his presence;
 "(2) When a felony has been committed, though not in his presence, by the person arrested;
 "(3) When a felony has been committed and he has reasonable cause to believe that the person arrested committed it;
 "(4) When he has reasonable cause to believe that the person arrested has committed a felony, although it may afterwards appear that a felony had not in fact been committed." (Emphasis added).
The uncontroverted evidence provided sufficient proof that a felony was committed when someone burglarized the automobile and removed the aforementioned items of personal property, including Mr. Brook's suitcase. Appellant was seen about an hour later, one diagonal block from the scene of the theft, and was carrying a suitcase matching the description given to the arresting officer. The suitcase and appellant's trousers had traces of blood on them. Blood had also been found on the rearseat of the automobile from which Mr. Brook's property was taken. These circumstances certainly gave the arresting officer "reasonable cause to believe" that appellant was involved in the theft and provided sufficient justification for appellant's arrest. Seals v. State, 282 Ala. 586, 213 So.2d 645 (1968);Sellers v. State, 48 Ala. App. 178, 263 So.2d 156 (1972); Thomasv. State, 50 Ala. App. 227, 278 So.2d 230 (1973); Knight v.State, Ala.Cr.App., 346 So.2d 478, 481, cert. denied, Ala.,346 So.2d 483 (1977).
 B
The appellant rests his argument regarding the validity of the search of the contents of the suitcase upon the validity of the arrest. Since we hold that the arrest was valid, we also find that the search was lawful as "incident to a lawful arrest." White v. State, 45 Ala. App. 1, 221 So.2d 117, cert. denied, 284 Ala. 734, 221 So.2d 119 (1969), and cases cited therein. Thomas v. State, supra.
Furthermore, the appellant consented to the arresting officer's search of the suitcase. For aught that appears such consent was both "knowing" and "voluntary". Appellant, therefore, waived his right to invoke the exclusionary rule via the "consent" exception. Daniels v. State, 290 Ala. 316,276 So.2d 441 (1973); Thomas v. State, 57 Ala. App. 320,328 So.2d 321 (1976); Garrett v. State, Ala., 369 So.2d 833 (1979).
 IV
After the verdict was returned, the trial court proceeded to sentence appellant for "second degree receiving stolen property." The prosecutor objected, noting that the Habitual Offender Act had been invoked and proper notice had been served on appellant just prior to trial. During a lengthy discussion regarding the timeliness of the notice given, the state convinced the trial court to grant a continuance of the sentencing hearing to cure any defect in notice and, thereby, allow appellant additional time to respond to the prior convictions. Over appellant's objection, the trial court granted a continuance of about five weeks. Appellant asserts this as reversible error. We disagree. *Page 256 
Appellant cites Rule 6 (b)(3), Alabama Rules of Criminal Procedure Temporary Rules, in support of his argument. This rule requires that a defendant be given "notice" of prior convictions that will be used against him at a "reasonable time" prior to the sentencing hearing. Appellant also cites a Jefferson County local rule that "notice" must be given "as soon after indictment as practical." Appellant asserts that such notice is necessary not only to allow the defendant time to defend against the prior conviction but also to give the defendant a chance to "deal" with the district attorney.
This court recently cleared up the issue of timely "notice" under the Alabama Habitual Felony Offender Act in Holley v.State, Ala.Cr.App., 397 So.2d 211 (1981), by construing the "reasonable notice" standard of Rule 6 (b)(3).
In Holley v. State, supra, the Habitual Felony Offender Act was not invoked until after trial of the "substantive offense". Nevertheless, the requirement of "advance notice" in Alabama was put to rest by Judge DeCarlo who stated for this court:
 "In Oyler v. Boyles, 368 U.S. 452, 82 S.Ct. 501
[7 L.Ed.2d 446], the United States Supreme Court stated:
 `[T]he determination of whether one is an habitual criminal is "essentially independent" of the determination of guilt on the underlying substantive offense . . . "it is a distinct issue, and it may appropriately be the subject of separate determination." . . . [D]ue process does not require advance notice that the trial on the substantive offense will be followed by an habitual criminal proceeding.'
 "Therefore, `advance notice' of the State's intention to proceed against Holley as a recidivist prior to his trial for the `substantive offense' which triggers the operation of the Alabama Habitual Felony Offender Act, supra, was not required. The Supreme Court in Oyler v. Boyles, supra, held that, although due process does not require notice prior to trial on the `substantive offense,' a defendant must have `reasonable notice,' and an opportunity to be heard relative to the recidivist charge, and the assistance of counsel."
Although there was quite a bit of confusion during the trial below concerning this issue (R.97-113) (and understandably so, considering the scarcity of applicable case law on the subject at the time of the hearing), we hold that the trial court correctly granted a continuance of the sentencing hearing, and in doing so, cured any possible injury to appellant by giving him several weeks to respond to the recidivist charges.
We refrain from commenting on the local court rules, which are not in issue, other than to say that the "as soon as practical after indictment" standard should now be conformed to our decision today, either by interpretation or by amendment.
We also resist commenting on appellant's assertion that "advance notice" is necessary so that defendants can effectively "deal" with prosecutors.
We hold only, in accordance with Oyler v. Boyles,368 U.S. 452, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), and Holley v. State, supra, that due process of law is satisfied by "reasonable notice" with "an opportunity to be heard relative to the recidivist charge" and that the notice given in this cause was sufficient in law.
 V
Appellant further contends that even if notice was sufficient, reversible error was committed in the presentencing hearing when the prosecution was allowed to introduce evidence of a prior conviction where appellant was not represented by counsel.
The record shows that three other prior convictions were properly established without objection and that only the fourth was, arguably, faulty as noted by appellant. Under very similar circumstances this court, recently, pronounced the rule inWatson v. State, Ala.Cr.App., 392 So.2d 1274, cert. denied, Ala., 392 So.2d 1280 (1980), that any *Page 257 
error in proving prior convictions in excess of the number needed to invoke the Habitual Offender Act is error without injury, where the evidence of the unneeded prior convictions did not prejudice the defendant. Here the sentence was only slightly stiffer than the prescribed minimum for three prior felonies (twenty years compared to fifteen years to life range). This supports our finding that the error, if any, in proving the fourth prior felony was harmless. Watson, supra.
Appellant's other contention raised in brief is unfounded.
Appellant for all intents and purposes, admitted in his pretrial statements, and all of the evidence adduced at trial supported the fact, that he had "received stolen property" with "knowledge" that it had been stolen. We have reviewed the issues raised by appellant and this entire record and have found no reversible error.
This case is, therefore, due to be and is affirmed.
AFFIRMED.
All the Judges concur.