James Wesley George was indicted for robbery in the first degree pursuant to § 13A-8-41, Code of Alabama 1975. The jury found the appellant guilty "as charged in the indictment" and he was sentenced to life imprisonment in the penitentiary, without parole under the Habitual Offender Act. The appellant's trial began on May 11, 1982. Just before trial, the appellant filed a formal request with the trial judge, asking that he be allowed to wear civilian clothes during the trial, particularly since he was going to represent himself at trial. The request was denied by the trial judge.
The State's only witness was the victim, James Gibson. Gibson testified that on December 20, 1981, he was an employee of the Alabama Board of Corrections at Holman Prison. On that day, at approximately 3:00 p.m., he was patrolling the main hall of the prison when he was approached by an inmate who said he was having trouble with the ice machine. Gibson went to the ice room with the inmate and saw the appellant at the ice machine flicking the switch up and down. When Gibson stooped to look at the machine, another inmate, Billy Joe Moore, placed a prison-made knife in his back and said, "Don't make a sound, don't make a move or I'll kill you right where you're at." (R. 8).
The appellant then put a handkerchief in Gibson's mouth and wrapped masking tape around his head. The inmates then took Gibson into the bathroom in the Chaplain's office, took his uniform off and tied his feet and hands. Another inmate put on Gibson's uniform.
They then took Gibson's billfold, which contained his American Express card and a twenty dollar bill, his keys, his pocketknife and some change from his pockets.
After the inmates left, Gibson managed to free his feet and kick open the door to get to the telephone in the Chaplain's office. He pushed the receiver off the hook and dialed central control with his hands tied behind his back. Gibson removed the gag from his mouth and told central control there was an escape in progress and to lock the prison.
The appellant put Billy Joe Moore on the witness stand. He testified that Gibson had agreed to help the inmates stage an escape and the events of that afternoon were part of a pre-arranged plan which was unsuccessful.
The appellant testified to basically the same facts as Billy Joe Moore. On cross-examination, the appellant testified to twenty prior convictions which he, the appellant, had for burglary, larceny and theft of property, three prior convictions for escape and one prior conviction for crime against nature.
 I
The appellant contends the trial court committed reversible error by failing to grant the appellant's request to wear civilian clothing during the trial itself. We agree with the appellant that in the majority of cases, courts have held that a defendant should not be compelled to attend trial in prison clothing because it would tend to prejudice the jury against the defendant and, thereby, negate the presumption of innocence. Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691,48 L.Ed.2d 126 (1976). However, "[a] different result may be appropriate where the defendant is on trial for an offense allegedly committed while he was in prison, because the jury would learn of his incarceration in any event." Estelle v.Williams, supra.
The appellant was on trial for an offense committed while he was an inmate at Holman prison. The jury was, therefore, certain to find out that he was in prison at the time he committed the robbery and during the course of the trial. "No prejudice can result from seeing that which is already known."United States ex rel. Stahl v. Henderson, 472 F.2d 556
(U.S.C.A., 5th Cir. *Page 337 
1973), cert. denied, 411 U.S. 971, 93 S.Ct. 2166,36 L.Ed.2d 694 (1973); Estelle v. Williams, supra.
Therefore, we do not agree with the appellant's contention and therefore hold that he was properly tried in his prison clothing.
 II
The appellant next contends that he was improperly sentenced under the Habitual Offender Act. Immediately after the trial judge excused the jury, the following occurred: (R. 35-36).
 "THE COURT: James Wesley George, you heard the verdict of the jury, have you anything to say why the sentence of law shouldn't be imposed upon you at this time?
"THE DEFENDANT: No, sir.
 "THE COURT: It is the judgment of the court, as found by the jury, that you are guilty of robbery in the first degree as averred in the indictment.
 And in accordance with the habitual offender act, it appearing from you (sic) own testimony you have been convicted of quite a number of felonies in the past, many over three, and under the habitual offender act it says, `In all cases where it is shown that a criminal defendant has been previously convicted of any three felonies and after such convictions has committed another felony he must be punished as follows: For a conviction of a Class A felony he must be punished by imprisonment for life without parole.'
 The statute doesn't seem to give this court any alternative, therefore I sentence you to life without parole.
 Now, of course, even though you have been convicted, you have a right to appeal this matter to the appellate courts of this state. If you need a transcript of the record of this court for the purpose of appeal and you cannot pay for it that will be given at state expense. If you need the assistance of counsel in perfecting an appeal and cannot hire your own lawyer that will be given at state expense. Do you understand that?
"THE DEFENDANT: Yes, sir.
"THE COURT: All right.
"THE DEFENDANT: I would like to appeal.
"MR. LOVELACE: You have forty-two days.
 "THE COURT: Let me say this: When you give notice of appeal your time for having it perfected starts running at that moment. I want to advise you of that since you are not a lawyer.
 "MR. LOVELACE: If you want, I would recommend you wait two or three weeks and then appeal.
 "THE COURT: Because your forty-two days start and then you must have everything in the appellate courts in forty-two days. I don't want you to get caught out and not have things get up there on time.
"THE DEFENDANT: All right, sir."
The appellant urges that his prior convictions were not properly established. This court has held that the admission of such prior convictions, by the defendant himself, is a proper method of proving those convictions. Lyner v. State,398 So.2d 420 (Ala.Crim.App. 1981); Hope v. State, 381 So.2d 676
(Ala.Crim.App. 1980); Palmer v. State, 54 Ala. App. 707,312 So.2d 399 (1975). The following excerpt from Childers v.Holmes, 207 Ala. 382, 92 So. 615 (1922) has been cited several times by this court:
 "The defendants' objection raised the question. They objected `because it was not the proper manner to prove a conviction.' The proper manner was not by this witness, but by a certified copy of the record showing it, or by the oral testimony of the person convicted. The court erred in overruling that objection to the question." (Emphasis added, citations omitted).
See Hope v. State, supra; Palmer v. State, supra.
Thus, we hold the trial judge properly considered the testimony of this appellant concerning his prior convictions, and therefore properly sentenced him. *Page 338 
 III
The appellant alleges he was not given a proper sentencing hearing as required by Rule 6 (b)(3)(ii) of the Alabama Rules of Criminal Procedure Temporary Rules.
After the opening statements of both the state and the defense, the following occurred outside the presence of the jury. (R. 4-6).
"THE COURT: All right, what motion do you have?
 "THE DEFENDANT: I have been given to understand that I am to be tried as a habitual offender; is that right?
 "THE COURT: Nobody has said what you are being — whether you fall under the act or not yet. That usually comes after a conviction.
 "MR. KIRKLAND: I don't know whether he does or not. I can ask the prison officials.
 Mr. Caudle says that he does fall under the habitual offender act or that he will.
 "MR. LOVELACE: I think what he is wanting, if it is true, he wants proof more than just at the end. He wants proof brought out.
 "THE COURT: Well, they will have to show that he is convicted before they put him under the habitual offender act.
 "THE DEFENDANT: That is what I was interested in is the hearing — the habitual offender hearing. This is after the trial.
 "THE COURT: This is after the trial. In other words, they ask you be sentenced as a habitual offender.
"THE DEFENDANT: Yes, sir.
 "THE COURT: Your guilt or innocence is what is to be determined by the jury now of offense. If you are convicted, then they bring out whether or not you are a habitual offender before sentence is imposed by the court. I do the sentencing.
 "MR. KIRKLAND: That would be proven by a presentence investigation by the probation officer — state probation officer.
 "THE COURT: That would be done at the conclusion, after the jury has made their verdict one way or the other. If the jury acquits you there wouldn't be anything to raise about a habitual offender.
 "MR. LOVELACE: You wouldn't want to raise it ahead of time and let the jury know how many convictions you have. What they are saying is that it come up until after the trial.
"THE DEFENDANT: I'm sorry. Thank you."
On February 8, 1980, the Supreme Court of Alabama promulgated the "Alabama Rules of Criminal Procedure-Temporary Rules." Rule 6 (b)(3)(i), (ii), (iii) sets out the procedure that is to be followed for hearings pursuant to the Habitual Offender Act, and the section of that Rule relevant to this case, Rule 6 (b)(3)(ii) reads as follows:
 "(ii) At a reasonable time prior to the hearing the defendant shall be given notice of the prior conviction or convictions upon which the State intends to proceed."
Advance notice is not required prior to the trial on the offense which triggers the operation of the Alabama Habitual Offender Act. Holley v. State, 397 So.2d 211 (Ala.Crim.App. 1981). . . . "[D]ue process of law is satisfied by `reasonable notice' with `an opportunity to be heard relative to the recidivist charge.'" . . . Smith v. State, 401 So.2d 251
(Ala.Crim.App. 1981).
Notice of the state's intention to proceed under the Habitual Offender Act is effectuated when the defendant is informed of this fact in open court.
Formal notice was given in this cause after the opening statements had been made, but before testimony had begun. The record seems to indicate the appellant understood he was to be tried as a habitual offender even before the trial began. (R. 4). The Supreme Court of the United States recognized in Oylerv. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962) that the habitual offender issue may be combined with the trial of the substantive offense or it may be the subject of a separate hearing. From the record, it appears *Page 339 
that the trial court intended to hold a separate hearing, after a sentence investigation. However, when the appellant admitted over twenty prior convictions in open court during this trial, the judge saw no reason to delay sentencing, especially because the judge was required to give the appellant a particular sentence.
The trial judge asked the appellant at the hearing whether he had anything to say before he imposed sentence. Even though the appellant chose to represent himself, a court appointed lawyer was seated with him throughout the trial, and when he was sentenced. Neither the appellant nor his attorney raised any objection, or sought a continuance on the ground that there had been inadequate notice. The appellant had an opportunity to be heard and an opportunity to object but chose not to do so.
In these circumstances, we must reject the appellant's argument that he was deprived of due process of law because he was not given a fair opportunity to contest his prior convictions. Oyler v. Boles, supra. We hold the trial court complied with requirements of Rule 6 (b)(3) of the Alabama Rules of Criminal Procedure — Temporary Rules in sentencing the appellant to life imprisonment without parole.
This record is free of error. Therefore, the judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.