LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a judgment of conviction and sentence in a case in which a jury had found defendant guilty under an indictment that charged in pertinent part that defendant:
“... did knowingly enter or remain unlawfully in a building of Pelham Hubbard, doing business as Jakes Groceries Number 1, with intent to commit a theft or a felony therein, to-wit Theft of Property, and while effecting entry or while in said building or in immediate flight therefrom, the said defendant or another participant, to-wit: Richard Henry Job-son, was armed with an explosive or deadly weapon, to-wit: a shotgun, in violation of Section 13A-7-6 of the Code of Alabama,....”
No issue is raised on appeal as to the sufficiency of the evidence to justify a submission to the jury of the issue as to defendant’s guilt, and we are confident that there was substantial evidence thereof. The trial court submitted the issue as to defendant’s guilt as to the crime expressly charged and also as to his guilt of the lesser included offense of burglary in the third degree, which is defined by § 13A-7-7(a) as conduct whereby one “knowingly enters or remains unlawfully in a building with intent to commit a crime therein.” By the final issue presented by appellant, he contends that the verdict was “against the weight of the evidence” in the failure of the evidence to show that either “appellant or state witness Richard Henry Jobson was armed with a weapon during the course of the burglary or in the immediate flight therefrom,” as required by § 13A-7-6(a)(l), which issue we will discuss later on in this opinion. We find it unnecessary to narrate the evidence, other than to state that it shows without dispute by the testimony of law enforcement authorities and the owner of the premises that a burglary was committed and further shows by the testimony of State’s witness Richard Henry Jobson that appellant was a participant in the burglary. When the State rested its case, the defendant also rested without calling any witness in his behalf.
I.
By the first issue presented in the brief of counsel for appellant, he contends that *479 “the prejudicial testimony of State witness Richard Henry Jobson” was “so damaging to the appellant herein that the curative instruction given by the trial judge could not have cured the prejudice that attached to appellant therefrom, thus requiring a reversal of appellant’s conviction.” This issue, we think, requires a rather detailed discussion as to the language or meaning of the “testimony of State witness Richard Henry Jobson.” We will endeavor to narrate that part of the transcript of the proceedings that has a material bearing upon the issue and as to the misunderstanding with reference to it.
After witness Jobson had testified that he had a criminal record of the commission of some crime and that he had had at one time previously, rather recently, occupied an apartment jointly with defendant and was in the process of testifying as to his participation in the burglary alleged in the indictment in the instant case, the trial court had a brief hearing out of the presence of the jury to determine whether the witness was testifying voluntarily or not and after the trial court had determined such voluntariness and that the witness did not desire the appearance of an attorney in behalf of the witness, his direct examination in the presence of the jury was resumed as follows:
“Q. Mr. Jobson, have you made any agreements with the State of Alabama in return for your testifying here today?
“A. Yes, sir.
“Q. And what is that agreement?
“A. Ten years and ten years on each case run concurrent.
“Q. Is that to the best of your knowledge, is that to be served in the State penitentiary?
“A. Yes, sir.
“THE COURT: The Jury can’t hear you, Mr. Warren [State’s attorney].
“Q. Will you speak into the microphone, please?
“A. Yes, sir.”
The witness then procéeded lengthily to detail the participation by him and the defendant, describe their movements, the merchandise that was stolen from the store, and concluded with his testimony on such direct examination by stating that the motor vehicle with which the two went to the store was owned by “Billy McGullion” to the knowledge of the witness. Cross-examination of the witness by defendant’s attorney was commenced as follows:
“Q. Okay, Richard Henry Jobson?
“A. Yes, sir.
“Q. Mr. Jobson, in response to Mr. Warren’s question earlier you said you plead to what, now? What are you pleading to, I believe you gave us a figure or number of years that you were pleading to something; tell the Court and the jury what that agreement is you have, please, sir.
“A. Ten years on each case.
“Q. On each case?
“A. Yes, sir.
“Q. What cases, please, Mr. Jobson?
“A. Other pending felonies in this county-
“Q. How many other pending felonies in this county now, sir?
“A. I have no idea.
“Q. How about — how about ten?
“A. Yes, sir.
“Q. You have ten pending felonies in this county, right now?
“A. I believe that was it.
“Q. Okay, and what’s your deal, again?
“A. Ten years on each one to run concurrent.
“Q. So in other words if you testify against my client under oath here today, you point a finger at my client, you’re going to get for ten pending felonies ten years in jail?
“A. Yes, sir.”
The cross-examination of the witness continued for about twelve more transcript pages, and then the redirect examination of the witness commenced. Soon thereafter in the redirect examination, the following occurred:
“Q. You said you had a deal with the State. Mr. Levinson went into a package *480 I believe; what were you supposed to do for those concurrent sentences?
“A. I was to testify.
“Q. Who were you- supposed to testify against?
“A. Billy McGullion.
“Q. Is that in each of those cases?
“A. Yes, sir.
“MR. LEVINSON: Your Honor, I would object. Was that question was he to testify against my client in every case that I asked Mr. Jobson about? Because if so, that’s not correct. He’s a co-defendant with him in this case but not in those other nine burglaries.
“THE COURT: All right.
“MR. LEVINSON: Was that the question?
“MR. WARREN: Okay, that’s not a true statement, either, but.
“MR. LEVINSON: No—
“MR. WARREN: No, it’s not, but I think—
“THE COURT: Okay. All right, let’s move on.
“MR. WARREN: We won’t go into it any further.
“THE COURT: Okay.
“Q. Did you know or do you know that swearing falsely under oath is perjury and is a felony offense?
“A. Yes, sir.
“Q. Are you telling the truth today under oath?
“A. Yes, sir.
“MR. WARREN: Those are all the questions I have.
“THE COURT: All right, Mr. Levin-son?
“MR. LEVINSON: Your Honor, no further questions, but I would like to make a motion out of the presence of the jury.”
At that point, a recess was declared for the jury until the next day, and upon the withdrawal of the jury, the following occurred:
“THE COURT: All right, what’s your problem?
“MR. LEVINSON: Your Honor, I’m trying to have the record read to me concerning the question asked Mr. Jobson about whether or not my client had some involvement with him in some other burglaries. I don’t know what the exact statement was, though, Judge. I have asked Parien to find it for us.
“Okay, find it, if you would.
“(Whereupon the requested portion of the testimony was read back by the Court Reporter, after which the following occurred.)
“THE COURT: Okay, go ahead.
“MR. LEVINSON: Judge, based on the testimony relative to the package deal and that my client is involved with the State’s witness and he is supposed to, words to this effect, testify against my client in each of those cases, that’s collateral wrong doing, Judge, in front of the jury. I would on that basis move for a mistrial. My client is charged with one crime here not these nine other or ten crimes, excuse me, nine others that the State’s witness is charged with. What’s happened is I’m sure inadvertently, Mr. Jobson has indicated to the jury that he’s a co-defendant to my client in nine other cases; he's tainted in front of the Jury, Judge.
“THE COURT: All right, read back both the question and answer. I didn’t understand it that way when it was testified to, just read back what was said.
“(Whereupon the requested portion of the testimony was once again read back by the Court Reporter, after which the following occurred.)
“MR. WARREN: Mr. Levinson is the one who went into the package on all the cases.
“MR. LEVINSON: Yes; Your Honor I have a right to do that, as you know.
“MR. WARREN: He mentioned being a co-defendant.
“MR. LEVINSON: In this case Larry; I didn’t mention any other collateral—
“MR. WARREN: You talked about ten cases in the co-defendant.
*481 “MR. LEVINSON: Larry, I did not put my client as a co-defendant with him in nine other cases. If the record says that then I stand corrected; I don’t believe it will say that.
“THE COURT: I didn’t take his testimony that way. You are the one that made the big deal about it in front of the Jury, jumping up and yelling that’s not true.
“MR. LEVINSON: Yes, sir; I did.
“THE COURT: And I didn’t understand it that way.
“MR. LEVINSON: Well I couldn’t run the risk that the Jury understood it the way I did, Your Honor. I had an obligation to Mr. McGullion. And I don’t guess asking them — I don’t know how you would do it.
“THE COURT: Okay, we’ll look at it first thing in the morning.
“MR. WARREN: Okay.
“MR. LEVINSON: Thank you, Judge. “(Recess at 4:55).”
When the court was called to order the following morning, defendant’s attorney argued his motion for a mistrial out of the presence of the jury. His argument was brief, in which he urged that Stain v. State, 273 Ala. 262, 138 So.2d 703 (1962), was favorable to him, and the State’s attorney briefly responded by showing the inapplicability of Stain v. State, supra. Thereupon, defendant’s attorney made another brief argument in reply, and then the trial court stated the following prior to the jury’s returning to the courtroom:
“I had the Court Reporter read me back the testimony this morning after she got here. And first of all, the questioning or the question and the answer was ambiguous as to what it really referred to, in my opinion. It didn’t impress me when it was given as being anything from which the jury could reasonably be expected to infer other criminal acts on the part of the defendant. That’s first of all.”
While the court continued his statement, the attorney for defendant requested that “to refresh my memory could we have it read back?” and the court said to the court reporter, “Go ahead and read it back, please.” After the portion of the transcript had been read back as requested, counsel for defendant continued to argue and refer to several files in which Mr. Jobson was a defendant in a criminal case, and in apparently relatively few of them Mr. McGullion was a co-defendant. After concluding this conference out of the hearing of the jury, the jury was returned to the courtroom, and the following occurred:
“THE COURT: Okay, let the record show everybody’s back.
“All right, Ladies and Gentlemen, first of all let me apologize for keeping you outside so long this morning. We had a point of law that needed to be fully explored and it took a little longer than I anticipated.
“Let me give you this instruction before we proceed any further. On yesterday a witness testified for the State, Mr. Richard Jobson. In his testimony, and I don’t recall, it may have been both during his direct examination and cross-examination, Mr. Jobson referred to an agreement that he had with the State in regard to each of ten cases that he had presently pending before the Court. During the course of his instruction [sic, the sic is that of the court reporter] he made a statement that may cause some of you to improperly infer that he had agreed to testify against Mr. McGullion, a defendant in this case, in regard to each of these ten cases. If you did infer that from his testimony, and it’s been suggested to the Court that you perhaps could infer that from the testimony that was given. I had the cases — asked Mr. Levinson to pull the cases to which he referred when he was questioning Mr. Jobson and he has provided the Court with court files, CC 84-56 through CC 84-65. The Court has reviewed the Indictments in each of these ten cases, all being cases pending — presently pending in this Court against Mr. Richard Henry Jobson; and I have referred or I have reviewed the Indictment in each of these cases. And I would just instruct you that in none of the Indictments in these *482 cases is Mr. McGullion named as a co-defendant or co-conspirator or anything of that nature. His name is not mentioned in any of the Indictments in those ten cases.
“Therefore, Ladies and Gentlemen, if in regard to the testimony of Mr. Jobson on yesterday there was some testimony from which you inferred that he was testifying against Mr. McGullion in each of these ten cases that he had presently pending in this Court I would instruct you that that would be an improper inference for you to draw, an improper conclusion for you to draw from the evidence. And if you did draw that inference on yesterday I would instruct you that you now basically eradicate that inference from your thinking, that conclusion from your thinking and you should not let it enter into your deliberations in the trial of this one particular case. “I'm going to ask you each individually whether you understand my instruction and whether you can follow my instruction. If you do, please state so. If you do not understand my instruction or cannot follow my instruction I would ask you to also state that for me, please. I’m going to start on the first row and I’m going to ask each one of you individually these two questions.
“Sir, did you understand my instructions?
“JUROR: Yes, sir.
“THE COURT: All right, can you follow my instruction?
“JUROR: Right.
“THE COURT: Ma’am, did you understand my instruction?
“JUROR: Yes.
“THE COURT: Can you follow my instruction?
“JUROR: Yes I can.”
The transcript continues in like manner for eight more jurors and then discloses the following:
“THE COURT: Let the record reflect that all twelve jurors answered in the affirmative that they understood the instruction and that they can follow the instruction.
“May I see the attorneys up here just a minute, please?
“(Whereupon the following was had outside the hearing of the jury.)
“THE COURT: On behalf of the Defendant are you satisfied with the instruction given the Jury; is there any other additional instruction you would like given? “MR. LEVINSON: Judge, I would like for them to be asked if they have — if they are willing to uphold their duty as Jurors and be able to render a verdict based only on this case and no others. And, Your Honor, I would point out on these indictments made aware to me this morning and that it be in some of these he is charged with in there.
“THE COURT: Well, I don’t know that. “MR. LEVINSON: Well, I need to check on that because I noticed when you said he was not a co-defendant it may be that he is.
“THE COURT: Well, I don’t know whether he is or not. As far as they know he is not. They have been told he is not. Whether that’s factual or not I don’t know. I reviewed them and he is not named in any of them. Now whether he is a co-defendant, I don’t know, but
The discussion between the trial judge and defendant’s attorney out of the presence of the jury continued for about two more pages and was concluded as follows:
“MR. LEVINSON: Well, it’s Mr. Jobson I’m wondering if the fact that he made that statement he’s going to be accusing him of a case, if that’s going to affect them at all.
“THE COURT: Do you want me to tell them that that is the statement he made? Because that’s not what the Court has found the statement to be. The Court has said that I cannot understand it to be that way. I denied your motion for a mistrial because I did not understand him to say that. But I’ve told them that if they inferred that they should disregard that; they shouldn’t let that enter *483 into their opinion. Now do you want me to turn around and tell them that he, in fact, made the statement?
“MR. LEVINSON: He did make the statement; it’s on the record.
“THE COURT: Okay, that’s your interpretation of it; denied.
“MR. LEVINSON: Yes, sir.
“THE COURT: All right.
“(Whereupon the conference at the bench ended after which the following occurred inside the hearing of the jury.)
“THE COURT: All right, call your next witness.
“MR. WARREN: Judge, yesterday Richard Jobson was on the stand and the State finished its redirect. And I believe now it’s up to Mr. Levinson whether he wants to ask—
“THE COURT: All right, do you have any recross of Mr. Jobson? He’s available if — for the State.
“MR. LEVINSON: Nothing further from Mr. Jobson.”
No further testimony was presented in the case.
We need not determine who was primarily responsible for the ambiguity or lack of clarity in the testimony of the witness Richard Henry Jobson now under consideration, but we are confident that it was fully explained to the jury by the trial judge that the concession or consideration promised the witness in the instant case by the authorities in charge of such prosecution against him did not include any favorable consideration of him in any case other than in the case sub judice.
Appellant’s attorney makes the point that only ten of the twelve jurors answered affirmatively the question asked in polling the jurors as to whether they understood the instruction of the trial court as to the matter and could follow it. It is to be noted that immediately after the poll was taken no question was raised by anyone as to whether all twelve had been questioned by the court and had responded affirmatively, but the court announced immediately thereafter:
“Let the record reflect that all twelve jurors answered in the affirmative that they understand the instruction and that they can follow the instruction.”
Whether the court reporter was correct or, on the other hand, the trial judge was correct in what the transcript shows in this respect is not for us to say, but, in the absence of any utterance by anyone concerned to show that at the time not all twelve jurors answered in the affirmative, our opinion is that all twelve did so.
II.
Appellant’s second issue is thus stated in the brief of counsel for appellant:
“WERE THE ALLEGEDLY STOLEN GOODS INTRODUCED INTO EVIDENCE AT THE APPELLANT’S TRIAL, PROPERLY IDENTIFIED SO AS TO MAKE THEIR ADMISSION INTO EVIDENCE LEGAL AND PROPER?”
The contention is made that State’s Exhibits 2, 3, 4, 5, and 6, consisting of a photograph of cigarettes, a photograph of gun shells, nine cartons of cigarettes, eight cartons of cigarettes, and thirteen boxes of gun shells, respectively, “were never properly identified as the goods alleged to have been stolen in the instant case, and that as a result he was prejudiced at his trial and his conviction should be reversed.” In support of this contention, appellant relies upon Nelson v. State, 29 Ala.App. 121, 192 So.2d 594 (1939); Hendricks v. State, Ala.App., 41 So.2d 420 (1948); Daw v. State, 42 Ala.App. 642, 176 So.2d 49 (1965); and Dawson v. State, 43 Ala.App. 254, 188 So.2d 283 (1966). Although each of the cases cited is nearly in point, it is definitely distinguishable from the instant case in that the appellant’s guilt of the crime charged therein, whether burglary or larceny, turned on whether property found in his possession after the alleged crime was the identical property, or one of the identical items of property, that he was charged with having criminally taken in the course of having committed burglary or larceny. In the instant case, the issue of the guilt of defendant does not turn on whether photo *484 graphs of items, or items themselves, found in an apartment occupied by appellant, were so identified as to prove that they were a part of the loot that was taken from the store on the night of the alleged burglary. The evidence was undisputed to the effect that the burglary as alleged had been committed by two persons by entering unlawfully into a building with intent to commit a theft and that one of the participants, Richard Henry Jobson, was armed with a shotgun. That some of the items identified as part of the merchandise taken from the store were not correctly identified is immaterial to the question of defendant’s guilt. Their introduction in evidence was supererogatory on the part of the State and was not prejudicial to defendant.
“To constitute burglary, it is not necessary that a theft be actually committed. Waid v. State, 39 Ala.App. 255, 97 So.2d 598; Wicks v. State, 44 Ala. 398; Jackson v. State, 52 Ala.App. 667, 296 So.2d 753.” Houston v. State, 56 Ala.Cr.App. 295, 321 So.2d 261, 264 (1975).
III.
By the third issue presented in appellant’s brief, the position is taken that the search warrant that was issued for the search of the premises where appellant recently lived was based on “untimely, hearsay information” and thus rendered “the fruits of the search warrant and the testimony relative thereto inadmissible for the jury’s consideration.” Appellant relies upon Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). We think the cited case does not support appellant’s contention. Involved was a case in which the Supreme Court of Illinois had granted defendant’s motion to suppress evidence of the fruits obtained by a search of defendants’ home and automobile by virtue of a search warrant issued by a proper officer on the affidavit of a law enforcement officer that a specified informer had given him information that defendant was in the process of transporting illegal drugs by the motor vehicle between his home and elsewhere. The following is stated at the conclusion of the majority opinion, 462 U.S. at 246, 103 S.Ct. at 2336, 76 L.Ed.2d at 534:
“It is apparent, therefore, that the judge issuing the warrant had a ‘substantial basis for concludpng]’ that probable cause to search the Gates’ home and car existed. The judgment of the Supreme Court of Illinois therefore must be reversed.”
We conclude that appellant’s third issue should be determined adversely to him.
IV.
The caption of appellant’s final issue is thus stated in his brief:
“WAS THE VERDICT AGAINST THE WEIGHT OF THE EVIDENCE DUE TO THE FACT THE TESTIMONY REVEALED THAT NEITHER APPELLANT NOR STATE WITNESS RICHARD HENRY JOBSON WERE [SIC] ARMED WITH A WEAPON DURING THE COURSE OF THE BURGLARY OR IN THE IMMEDIATE FLIGHT THEREFROM, AND AS A RESULT SHOULD THE CONVICTION BE REVERSED?”
Perhaps it was not shown as clearly as it should have been that one of the two participants in the alleged burglary was “armed with a weapon during the course of the burglary or in the immediate flight therefrom.” Nevertheless, appellant’s final contention is not well taken, in the light of the following part of the testimony of Richard Henry Jobson:
“Q. Did you and Mr. McGullion take any type of weapon with you on this occasion?
“A. Yes, sir; we carried his twenty gauge shotgun.
“Q. Was it loaded or unloaded?
“A. It was loaded.”
Appellant discloses no error prejudicial to defendant by the trial court. Its judgment should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article *485 (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.